## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

COAST RUNNER, INC.,

        Plaintiff,

v.

KICKSTARTER, PBC; INDIEGOGO, INC.; LAUNCHBOOM, INC.; JOHN DOES #1 AND #2,

        Defendants.

**Civil Action No. 7:24-cv-326**

Judge David Counts
Magistrate Judge Ronald C. Griffin

## <u>DEFENDANT INDIEGOGO, INC.'S MOTION TO DISMISS</u>

**PAUL HASTINGS LLP**

Paul R. Genender
Texas State Bar No. 00790758
paulgenender@paulhastings.com
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    1(972) 936-7500
Facsimile:    1(972) 936-7501

Ryan Phair (*pro hac vice* pending)
ryanphair@paulhastings.com
2050 M Street NW
Washington, DC 20036
Telephone:    (202) 551-1751

***Attorneys for Defendant***
***INDIEGOGO, INC.***

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ............................................................................................................... 1

Background ................................................................................................................ 1

Legal Standard .......................................................................................................... 3

Argument ................................................................................................................... 4

I.      Plaintiff's Sherman Act Claim Should Be Dismissed ............................................. 4

     A.      Group boycotts motivated by a noneconomic purpose are not prohibited by the Sherman Act, and Plaintiff alleges a group boycott motivated exclusively by a noneconomic purpose. .................................... 5

     B.      The alleged conspiracy is implausible because it was instigated by unknown and unnamed actors and, as alleged, was explicitly against Indiegogo's interest. ....................................................................................... 7

     C.      Plaintiff failed to plead a plausible unreasonable restraint of trade. ......... 10

     D.      Indiegogo's alleged conduct is immune from liability under the Noerr-Pennington doctrine ........................................................................ 12

II.      Plaintiff's Claim That Indiegogo Violated The Texas Free Enterprise And Antitrust Act Fails For The Same Reasons That Its Sherman Act Claim Fails ..................................................................................................................... 14

III.      Civil Conspiracy Is Not A Claim, But Rather A Theory Of Vicarious Liability, And Indiegogo Cannot Be Liable For The Alleged Underlying Wrongs. .................................................................................................................. 15

IV.      Indiegogo Is Immune From Liability For The Alleged Conduct Under Section 230 Of The Communications Decency Act. ............................................ 17

Conclusion ............................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*A.B. v. Salesforce, Inc.*,
  123 F.4th 788 (5th Cir. 2024) ..........................................................................17, 18

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019)..............................................................................15, 16

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)...................................................................................................6

*Apex Hosiery Co. v. Leader*,
  310 U.S. 469 (1940)...................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................4, 8

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  563 F. Supp. 3d 578 (W.D. La. 2021),
  aff'd 49 F.4th 520 (5th Cir. 2022).........................................................................11

*California v. Coast Runner Indus., Inc.*,
  37-2024-00020896-CU-MC-CTL (Cal. Super. Ct.) ...............................................2

*Coastal Sales Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) ..............................................................................13

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ...........................................................................17, 18

*F.T.C. v. Superior Court Trial Lawyers Ass'n*,
  493 U.S. 411 (1990)...................................................................................................6

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..............................................................................18

*First United Pentecostal Church of Beaumont v. Parker*,
  514 S.W.3d 214 (Tex. 2017)..................................................................................15

*Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*,
  789 F. Supp. 760 (S.D. Miss. 1992),
  aff'd sub nom. Futurevision Cable v. Multivision, 986 F.2d 1418 (5th Cir. 1993) ..................8

*Ginzburg v. Memorial Healthcare Sys., Inc.*,
   993 F. Supp. 998 (S.D. Tex. 1997) ...................................................................10

*Green v. Am. Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003)............................................................................17

*Greenwood Utils. Comm'n v. Miss. Power Co.*,
   751 F.2d 1484 (5th Cir. 1985) .......................................................................13

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
   359 U.S. 207 (1959).........................................................................................5

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) ...........................................................18

*Love Terminal Partners L.P. v. City of Dallas*,
   527 F. Supp. 2d 538 (N.D. Tex. 2007) ...........................................................13

*Marucci Sports, L.L.C. v. NCAA*,
   751 F.3d 368 (5th Cir. 2014) .....................................................................8, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).........................................................................................8

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)..................................................................................5, 6, 7

*Nichs. Servs., LLC v. Glassdoor, LLC*,
   — F. Supp. 3d —, 2024 WL 3898345 (N.D. Miss. Aug. 21, 2024).....................17

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ....................................................................11, 12

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary and Printing Co.*,
   472 U.S. 284 (1985)............................................................................10, 11, 12

*Pickett v. InfoUSA, Inc.*,
   561 F. Supp. 2d 646 (E.D. Tex. 2006).............................................................17

*Pro Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993).........................................................................................13

*Salts v. Moore*,
   107 F. Supp. 2d 732 (N.D. Miss. 2000)............................................................8

*Spectators' Commc'n Network Inc. v. Colonial Country Club*,
   253 F.3d 215 (5th Cir. 2001) ...........................................................................8

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*,
  200 F.3d 307 (5th Cir. 2000) ........................................................................5

*The Coca-Cola Co. v. Harmar Bottling Co.*,
  218 S.W.3d 671 (Tex. 2006).......................................................................14

*Tunica Web Advert. v. Tunica Casino Operators Ass'n*,
  496 F.3d 403 (5th Cir. 2007) .....................................................................10

*United Mine Workers of Am. v. Pennington*,
  381 U.S. 657 (1965)...................................................................................13

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) .............................................................13, 15

STATUTES

15 U.S.C. § 1 .......................................................................................3, 4, 5, 10

47 U.S.C. § 230(c)(1)...............................................................................17

Communications Decency Act, 47 U.S.C. § 230................................17, 18

Tex. Comm. Code § 15.05 ..............................................................................3

Tex. Bus. & Com. Code § 15.04................................................................14

RULES

Fed. R. Civ. P. 12(b)(6).......................................................................1, 3, 4

Fed. R. Civ. P. 12(c) ...................................................................................8

## INTRODUCTION

Defendant Indiegogo, Inc. ("Indiegogo") files this Motion to Dismiss Plaintiff Coast Runner, Inc.'s ("Plaintiff") Complaint. Plaintiff has brought three claims against Indiegogo alleging that Indiegogo violated the Sherman Antitrust Act and Texas Free Enterprise and Antitrust Act, and engaged in a civil conspiracy. Indiegogo is alleged to have committed these wrongs by declining to host Plaintiff's crowdfunding campaign on the Indiegogo crowdfunding platform. Plaintiff's claims are deficient, however, and should be dismissed under Rule 12(b)(6).

## BACKGROUND

Plaintiff claims to be a company that has developed a computer numerical control, or "CNC," milling machine known as the CR-1. Compl. ¶¶ 26–29. CNC milling machines like the CR-1 "take plastic, wood, metals, and other materials and cut them into specific shapes." Compl. ¶ 21.

One of Plaintiff's executives is an individual named Cody Wilson. Compl. ¶ 24. As the Complaint alleges, the CR-1 is not the first CNC milling machine developed by Mr. Wilson. Compl. ¶ 27. Instead, Plaintiff claims that Mr. Wilson is also responsible for a CNC milling machine called the Ghost Gunner, sold by a company called Defense Distributed, which is another of Mr. Wilson's ventures. *Id*. The purpose of the Ghost Gunner is to "manufacture parts for making, repairing, or modifying firearms." *See* Compl. ¶¶ 25, 27. Nevertheless, the Complaint repeatedly emphasizes the allegation that Coast Runner's CR-1 and the Ghost Gunner are entirely distinct products. *See, e.g.*, Compl. ¶¶ 27, 63. Instead, Plaintiff claims that the CR-1 is "an all-purpose CNC milling machine" that is not "an arms-related product." Compl. ¶ 30. Whatever the truth of Plaintiff's claims regarding the all-purpose nature of the CR-1, the State of California has a lawsuit pending that asks the Superior Court of the State of California to find that the CR-1 violates a California law that prohibits the sale or marketing of a CNC milling machine that "has the sole or

primary function of manufacturing firearms." *See* Complaint for Damages and Injunctive Relief, *California v. Coast Runner Indus., Inc.*, 37-2024-00020896-CU-MC-CTL (Cal. Super. Ct.) at ¶ 3.

Indiegogo is a crowdfunding platform. *See* Compl. ¶ 50. As Plaintiff alleges, crowdfunding is one way in which companies and individuals can raise money for their business. Compl. ¶ 36. Crowdfunding platforms like Indiegogo host "crowdfunding campaign[s]," where a business solicits investment in their company or product, typically in exchange for "a copy of the finished product along with other 'perks,' which are usually upgrades, expansions, or other improvements to the base product." Compl. ¶¶ 2, 36. Crowdfunding platforms make money by "tak[ing] a commission in proportion to" contributions made to the crowdfunding campaign. Compl. ¶ 2. Crowdfunding with Indiegogo—or crowdfunding at all—is just one way that a business might seek investment. As Plaintiff alleges, only "[s]ome turn to crowdfunding." Compl. ¶ 1. Businesses are free to solicit funding from private individuals, banks, or any other source in addition to or as a replacement to crowdfunding.

In this suit, Plaintiff alleges that Indiegogo engaged in a group boycott of Plaintiff by declining to host on the Indiegogo platform a crowdfunding campaign for the CR-1, a product developed by Plaintiff. Compl. ¶ 105. Indiegogo did so, Plaintiff alleges, after engaging in a "whole-of-company effort" to launch Plaintiff's crowdfunding campaign on the Indiegogo platform, Compl. ¶ 7, which cost Indiegogo a "substantial investment of time and resources," Compl. ¶ 93. After Plaintiff's crowdfunding campaign was launched on Indiegogo, Plaintiff allegedly "secured over $250,000 in backing" on the Indiegogo platform. Compl. ¶ 88. Indiegogo stopped hosting Plaintiff's crowdfunding campaign shortly thereafter, and refunded to contributors all investments, thereby foregoing any possible return on its own investment of time and resources. Compl. ¶ 98.

Plaintiff alleges that Indiegogo stopped hosting the CR-1 crowdfunding campaign as part of a group boycott primarily involving two firms: Indiegogo and Kickstarter. Indiegogo is alleged to be "Kickstarter's rival and only substantial competitor." Compl. ¶ 4. Despite this rivalry, Plaintiff alleges that Indiegogo joined the group boycott because Kickstarter "asked them to." Compl. ¶ 93. The Complaint offers no motive for Indiegogo to have agreed to its rival's request. Kickstarter is alleged to have established the group boycott at the request of John Doe # 1 and John Doe # 2, Compl. ¶ 10, an "unknown individual" and "unknown entity," respectively. Compl. ¶¶ 15–16. The Complaint offers no motive for Kickstarter to have agreed to the unknown individual's and unknown entity's request. John Doe #1 and John Doe #2 are alleged to have asked Kickstarter to engage in the group boycott because the Does disagree with Plaintiff's "founders' political views." Compl. ¶ 9.

Based on the alleged group boycott, Plaintiff sued Indiegogo and all Defendants for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (First Cause of Action); violation of the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Comm. Code § 15.05 (Second Cause of Action); and civil conspiracy (Fifth Cause of Action). Plaintiff sued only John Doe # 1 and John Doe # 2 for tortious interference with contract (Third Cause of Action) and business disparagement (Fourth Cause of Action).

On February 28, 2025, Indiegogo concurrently filed its Motion to Sever and Transfer Venue, or, in the alternative, Motion to Compel Arbitration and Stay, based on the agreement between Indiegogo and Plaintiff.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. Instead, the complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

## ARGUMENT

All three of Plaintiff's claims against Indiegogo should be dismissed. Plaintiff's Sherman Act claim is legally deficient for numerous reasons, and Plaintiff's antitrust claim under Texas law fails on the same grounds. And Plaintiff's third claim against Indiegogo, civil conspiracy, is not a claim at all. Even if Plaintiff's claims were not each individually flawed in their own right, Indiegogo is immune from liability in this case because Plaintiff's claims are based on Indiegogo's Constitutionally-protected conduct and role as a publisher of third-party content. Therefore, Plaintiff's claims against Indiegogo should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    Plaintiff's Sherman Act Claim Should Be Dismissed.

Plaintiff seeks to hold Indiegogo liable under Section 1 of the Sherman Act for participating in an alleged group boycott of Plaintiff by declining to host Plaintiff's crowdfunding campaign on the Indiegogo crowdfunding platform.

Plaintiff's Sherman Act claim should be dismissed for four independent reasons. First, the complained-of group boycott is alleged to be motivated by a solely noneconomic purpose—political disagreement—and therefore falls outside the ambit of the Sherman Act. Second, Plaintiff failed to plausibly plead the conspiracy element of its claim because the Complaint does not include sufficient facts to support a plausible conspiracy. Third, Plaintiff failed to plausibly plead the unreasonable restraint of trade element, as crowdfunding is not necessary for Plaintiff to compete. Fourth and finally, Indiegogo is immune from antitrust liability for the challenged conduct under the *Noerr-Pennington* doctrine because the alleged activity was political in nature.

The Sherman Act prohibits every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To state a claim, Plaintiff must allege that "the defendants (1) engaged in a conspiracy (2) that produced some anti-competitive effect (3) in the relevant market." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200 F.3d 307, 312 (5th Cir. 2000). Plaintiff's claim fails on each element of a Sherman Act violation.

A.    **Group boycotts motivated by a noneconomic purpose are not prohibited by the Sherman Act, and Plaintiff alleges a group boycott motivated exclusively by a noneconomic purpose.**

Group boycotts violate the Sherman Act only when motivated a commercial purpose. But here, Plaintiff exclusively and explicitly alleges that Indiegogo participated in a group boycott driven by a noncommercial purpose: political disagreement with Plaintiff's executives. Plaintiff therefore pled itself out of the protection of the antitrust laws, and its Sherman Act claim should be dismissed.

The Sherman Act is limited to regulating group boycotts with a commercial purpose for two, related reasons. First, the Sherman Act is intended to prohibit agreements that arise from only "commercial objectives." *See Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 n.7 (1959). When an activity is not commercially-driven, despite incidental effects on commerce, it falls outside the bounds of conduct regulated by the Sherman Act. *See Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493 n.15 (1940) ("The history of the Sherman Act as contained in the legislative proceedings is emphatic in its support for the conclusion that 'business competition' was the problem considered.").

Second, the Sherman Act is limited to only commercially-driven activity because the Supreme Court has held that group boycotts motivated by a noncommercial purpose are protected by the First Amendment and, as such, cannot be prohibited by the Sherman Act. *See NAACP v.*

*Claiborne Hardware Co.*, 458 U.S. 886, 912 (1982) (holding that First Amendment precludes prohibition of a politically-motivated group boycott). In *Claiborne*, the Supreme Court recognized that the unequivocal intent of the group boycott was to cause "economic injury" to the targets of the campaign. *Id.* at 914. Even so, because the boycotters' purpose was "political," they could not be held liable. *Id.* at 914–15; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 508 (1988) (explaining that the boycotters in *Claiborne* were protected from antitrust liability because they "did not stand to profit financially from a lessening of competition in the boycotted market").

The key issue is not whether the alleged boycotters' moral motives are "altruistic," but rather, whether the motives are economic. *See F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 427 (1990). On one hand, the boycotters in *Claiborne* used economic means (a group boycott) with a political or social motive: they sought "to change a social order." *Claiborne*, 458 U.S. at 912. Consequently, the First Amendment protected the *Claiborne* boycotters. In contrast, the group boycotters in *Trial Lawyers*—despite "altruistic" motives—were not protected by the First Amendment. *Trial Lawyers*, 493 U.S. at 427. In distinguishing *Claiborne*, the *Trial Lawyers*' court explained that "[n]o matter how altruistic the motives of respondents may have been, it is undisputed that their immediate objective was to increase the price that they would be paid for their services." *Id.* Because the group boycotters in the *Trial Lawyers* case had an economic motive—increasing their pay—the First Amendment did not protect them from antitrust liability.

Consistent with Supreme Court precedent, courts across the country have concluded that group boycotters cannot be liable under the antitrust laws where the boycott lacks an economic motivation. For instance, in *Missouri v. National Organization for Women*, the Eighth Circuit held that group boycotters could not be liable under the Sherman Act because the motive for the boycott

6

"is not one of profit motivation," but rather, "the crux of the issue is that [the alleged conspiracy] was politically motivated to use a boycott." 620 F.2d 1301, 1312, 1314 (8th Cir. 1980).

In this case, Plaintiff alleges only a noneconomic motive for the alleged group boycott: supposed political disagreement with Plaintiff's executives. Plaintiff alleges that the group boycott came about because of Plaintiff's "founders' political views," Compl. ¶ 9, and was spurred by "John Doe #1 and John Doe #2's lobbying of Kickstarter to end its relationship" with Plaintiff, Compl. ¶ 83. The Complaint contains no allegations that Indiegogo had any commercial motivation for the alleged group boycott, or stood to gain commercially from the alleged group boycott. In fact, the Complaint alleges that the group boycott <u>harmed</u> Indiegogo's commercial position. Plaintiff alleges that Indiegogo would have been entitled to "a commission in proportion to the [CR-1's] success" of the crowdfunding campaign. Compl. ¶ 2. But instead of hosting the crowdfunding campaign and reaping the profits, Plaintiff alleges that Indiegogo made a patently noncommercial decision to forego hosting a campaign that "projected funding revenue in the millions of dollars." Compl. ¶ 4.

Like the boycotts in *Claiborne* and *N.O.W.* that received First Amendment protection, the alleged group boycott here had a noncommercial purpose. Indeed, not only was the boycott motivated by a noneconomic purpose, but as alleged, it also had a negative economic effect on Indiegogo. Consequently, accepting all of Plaintiff's allegations as true, Indiegogo participated only in Constitutionally-protected activity: a noneconomic boycott. The Sherman Act claim against it therefore should be dismissed.

**B.** **The alleged conspiracy is implausible because it was instigated by unknown and unnamed actors and, as alleged, was explicitly against Indiegogo's interest.**

Plaintiff's Sherman Act claim should also be dismissed because Plaintiff failed to allege a plausible conspiracy to achieve an unlawful objective. To state a claim, Plaintiff needed to

plausibly allege "that the defendants engaged in concerted action, defined as having a conscious commitment to a common scheme designed to achieve an unlawful objective." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 373–74 (5th Cir. 2014). It is Plaintiff's burden to plead facts "plausibly suggesting (not merely consistent with) agreement." *Twombly*, 550 U.S. at 557. Because a pleaded conspiracy that makes no sense is necessarily implausible, it cannot survive a motion to dismiss. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 595 (1986) (ordering summary judgment where defendant "had no motive to enter into the alleged conspiracy"); *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 779 (S.D. Miss. 1992) (dismissing antitrust conspiracy claims because plaintiff failed to plead any "rational economic motive to conspire" for the defendants), *aff'd sub nom. Futurevision Cable v. Multivision*, 986 F.2d 1418 (5th Cir. 1993). *See also Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219–20 (5th Cir. 2001) ("courts will not draw inferences to support a claim that makes no economic sense); *Salts v. Moore*, 107 F. Supp. 2d 732, 742 (N.D. Miss. 2000) (granting with prejudice a Rule 12(c) motion for judgment on the pleadings where the complaint failed to plead "any rational economic motive for the [defendants] to conspire").

Plaintiff's Complaint fails to meet its burden because the supposed conspiracy makes no sense for three, overlapping reasons.

First, the genesis of the alleged conspiracy is "political pressure from John Doe #1 and John Doe #2" on Kickstarter. Compl. ¶ 10. But there are no facts alleged in the Complaint to even remotely suggest that this is true. John Doe #1 is "an unknown individual" with an "unknown" state of residence. Compl. ¶ 15. John Doe #2 is similarly "an unknown entity" that has an "unknown" state of residence and principal place of business. Compl. ¶ 16. Plaintiff speculates that the "most likely" identity of John Doe #2 is "an organization opposed to gun rights," but again,

there are no facts alleged to suggest that this is true. Compl. ¶ 74. Similarly missing from the Complaint is any explanation for how "an unknown individual" and "an unknown entity" were able to compel Kickstarter, Indiegogo, and Launchboom to join such a conspiracy. Such implausible and conclusory allegations are insufficient to defeat a motion to dismiss.

Second, Plaintiff fails to allege any plausible reason that Indiegogo would agree to join a conspiracy based on the request of its "rival and only substantial competitor." Compl. ¶ 4. Despite this rivalry, Plaintiff alleges that Indiegogo joined this group boycott because Kickstarter "asked them to." Compl. ¶ 93. The Complaint offers no motive for Indiegogo to have agreed to its rival's request, or any inducement offered by Kickstarter. In fact, Plaintiff alleges that Indiegogo initially pursued Plaintiff's crowdfunding campaign, only to lose the business to Kickstarter, but then ultimately won the business. Compl. ¶¶ 77–78. But just as quickly, Indiegogo is alleged to have dropped Plaintiff's crowdfunding campaign, all because Indiegogo's chief rival "asked them to." Compl. ¶ 93. Plaintiff offers no facts whatsoever to suggest any reason why Indiegogo would agree to such a request.

Third and finally, the alleged group boycott itself was against Indiegogo's economic interest, and Plaintiff offers no justification for why Indiegogo (or Kickstarter) would give up the supposed benefits of hosting Plaintiff's crowdfunding campaign. In other words, there is no alleged "benefit" to Indiegogo or Kickstarter from this group boycott, and consequently, no reason to believe that it in fact took place. By allegedly participating in this group boycott, Kickstarter and Indiegogo allegedly turned down the right to "a commission in proportion to the [CR-1's] success," Compl. ¶ 2, with such success expected to be "in the millions of dollars," Compl. ¶ 4. But there is no reason given that Indiegogo would turn down a financial windfall at the simple request of its rival.

Taken together, the alleged conspiracy is entirely implausible. It was instigated by an "unknown individual" and an "unknown entity." It required the coordination of two corporate rivals, Indiegogo and Kickstarter, for no alleged benefit. And in fact, the group boycott as alleged harmed Indiegogo. Such a speculative "conspiracy," contrary to Indiegogo's economic interest, and with no enforcement mechanism, falls short of Plaintiff's burden to plead a plausible conspiracy. Dismissal is justified.

### C.     Plaintiff failed to plead a plausible unreasonable restraint of trade.

Plaintiff's Sherman Act claim should be dismissed because it fails to plausibly allege that the alleged conspiracy unreasonably restrained trade. After pleading a conspiracy, a Sherman Act plaintiff must sufficiently plead an unreasonable restraint of trade; "whether it violates § 1 is determined by the application of either the *per se* rule or the rule of reason." *Marucci*, 751 F.3d at 374. Plaintiff's Complaint explicitly and exclusively claims a violation under the *per se* rule.

The *per se* rule applies to "conduct so pernicious and devoid of redeeming virtue that it is condemned without inquiry into the effect on the market in the particular case at hand." *Id*. Unlike other types of alleged antitrust violations, only a narrow category of horizontal group boycotts are subject to the *per se* rule. Only horizontal group boycotts that (1) involve boycotting firms that "possess[] a dominant position in the relevant market," (2) "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete," and (3) involve "practices [that] were generally not justified by plausible arguments that they were intended to enhance overall efficiency and make markets more competitive" are subject to the *per se* rule. *See Nw. Wholesale Stationers, Inc. v. Pac. Stationary and Printing Co.*, 472 U.S. 284, 294 (1985); *Tunica Web Advert. v. Tunica Casino Operators Ass'n*, 496 F.3d 403, 414–15 (5th Cir. 2007) (ordering trial court to consider *Northwest Wholesale* factors). *See also Ginzburg v. Memorial Healthcare Sys., Inc.*, 993 F. Supp.

998 (S.D. Tex. 1997) (observing that "[a] group boycott is not, contrary to [plaintiff's] contentions, always a per se violation").

The Complaint fails because Plaintiff did not plausibly allege that the alleged boycott "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete," the second *Northwest Wholesale* requirement. 472 U.S. at 294.

Plaintiff's own allegations establish that crowdfunding with Kickstarter or Indiegogo is not "necessary to enable" it to compete, thus dooming the Complaint. *Id*. Indeed, Plaintiff specifically alleges that it had other, non-crowdfunding opportunities that it could have pursued, describing "fruitful conversations with private investors." Compl. ¶ 35. Despite the availability of other fundraising opportunities, Plaintiff evidently decided to pursue only crowdfunding. On the other hand, the Complaint is replete with allegations indicating that Plaintiff did, in fact, raise and spend money without crowdfunding. Plaintiff claims that it spent "hundreds of thousands of dollars" before its crowdfunding campaign. Compl. ¶ 3. Similarly, Plaintiff seems to have had the financial support to engineer the CR-1 in the first place. The Complaint references "hundreds of thousands of dollars of investment" that Plaintiff had, prior to any crowdfunding. *See* Compl. ¶ 117. Indeed, Plaintiff's apparent fundraising success and the availability of non-crowdfunding options indicates that it lacks antitrust standing to sue in the first place, as statutory standing for antitrust claims requires that "[e]ven a plaintiff injured in his business or property must, in order to sue for damages, show 'antitrust injury,' that is, 'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007) (citation omitted). "[A]n inquiry into antitrust injury always asks whether there is a causal connection between the alleged injury of the plaintiff and the anticipated anticompetitive effect of the specific practice that allegedly violates antitrust law." *BRFHH*

*Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 563 F. Supp. 3d 578, 589 (W.D. La. 2021), aff'd 49 F.4th 520 (5th Cir. 2022). Here, Plaintiff seems to lack an injury in the first place, let alone an injury that "the antitrust laws were designed to protect." *Norris*, 500 F.3d at 465.

Plaintiff's allegations about the market more broadly further establish that crowdfunding is not "necessary" for it to compete, and therefore, that *per se* treatment is not warranted. Indeed, the Complaint opens by alleging that only "some" entrepreneurs "turn to crowdfunding" to raise money for their business, indicating that crowdfunding is not necessary to compete. Compl. ¶ 1. If crowdfunding were "necessary" to an entrepreneur's ability to compete, every entrepreneur would crowdfund. But the Complaint establishes that crowdfunding is just one option that entrepreneurs have—they can always look elsewhere.

Under *Northwest Wholesale*, a horizontal group boycott is subjected to the *per se* rule only when the alleged boycott "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete." 472 U.S. at 294. Plaintiff's allegations show much the opposite: that crowdfunding is not necessary for it to compete and, as such, the alleged "boycott" of Plaintiff from two crowdfunding platforms is not subject to the *per se* rule. Because Plaintiff is proceeding only under the *per se* rule of liability, and its *per se* theory is fatally flawed, the claim should be dismissed.

### D.    Indiegogo's alleged conduct is immune from liability under the Noerr-Pennington doctrine.

Plaintiff alleges that Indiegogo participated in a group boycott based on supposed disagreement with Plaintiff's executives' political views. But political activity is protected from antitrust liability under the *Noerr-Pennington* doctrine. Because Plaintiff's allegations establish that the alleged group boycott was political activity, the claim should be dismissed.

The *Noerr-Pennington* doctrine provides immunity to attempts to influence the government. It "shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). In order to protect First Amendment rights, the doctrine "allows individuals or businesses to petition the government . . . grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions for selfish, even anticompetitive ends." *Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1497 (5th Cir. 1985). Consequently, the *Noerr-Pennington* doctrine means that antitrust laws cannot be used to "punish political activity." *Pro Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

Boycotts are included within the activity protected by *Noerr-Pennington* immunity. *See Coastal Sales Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1364 (5th Cir. 1983) ("[Plaintiff] first argues that petitioning immunity does not extend to boycotts. The argument is without merit."). The doctrine provides immunity not only for antitrust claims, but for all claims arising out of the underlying petitioning activity. *See Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084–85 (5th Cir. 1988) (applying *Noerr-Pennington* to dismiss a tortious interference claim). The *Noerr-Pennington* doctrine requires that a motion to dismiss be granted where "it is apparent from the face of plaintiffs' complaint that defendants are entitled to *Noerr-Pennington* immunity." *Love Terminal Partners L.P. v. City of Dallas*, 527 F. Supp. 2d 538, 550 (N.D. Tex. 2007).

Here, Plaintiff alleges that Indiegogo participated in the group boycott as a form political advocacy, based on supposed political disagreement with Plaintiff's executives, Compl. ¶ 9, and that the group boycott is how Indiegogo signaled that disagreement. Indiegogo understands Plaintiff's allegation to be that Defendants want the judiciary to have an interpretation of the

Second Amendment different than Plaintiff's executives. *See* Compl. ¶¶ 25, 75. But that alleged political disagreement and attempt to influence the government is exactly the conduct protected by the *Noerr-Pennington* doctrine. As a result, the claims against Indiegogo should be dismissed.

## II.    Plaintiff's Claim That Indiegogo Violated The Texas Free Enterprise And Antitrust Act Fails For The Same Reasons That Its Sherman Act Claim Fails.

Plaintiff's claim against Indiegogo under the Texas Free Enterprise and Antitrust Act is a copycat of its federal antitrust claim. Indeed, Plaintiff's Complaint acknowledges as much. Plaintiff includes no further detail under its Cause of Action for its state law antitrust claim, instead stating that "[f]or the same reasons set forth in paragraphs 105-108, above, Defendants' actions violate the Texas Free Enterprise and Antitrust Act of 1983." Compl. ¶ 111. Paragraphs 105–108 are the allegations under Plaintiff's Sherman Act Cause of Action. Critically, the Texas Antitrust Act provides that "[t]he provisions of this Act shall be construed to accomplish [its] purpose and shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with [its] purpose." Tex. Bus. & Com. Code § 15.04; *see also The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 688 (Tex. 2006) ("[W]e must, as we have noted, construe the [Texas Antitrust Act] in harmony with federal antitrust caselaw to promote competition for consumers' benefit. Because our own caselaw is limited, we rely heavily on the jurisprudence of the federal courts.").

As a result, the same four reasons that doom Plaintiff's Sherman Act claim against Indiegogo also doom the state antitrust claim against Indiegogo. First, the Texas Antitrust Act does not, because it cannot, prohibit a group boycott motivated by a noneconomic purpose consistent with the First Amendment. *See supra*, Section I.A. Second, the alleged conspiracy is just as implausible under the Texas Antitrust Act as it is under the Sherman Act. *See supra*, Section I.B. Third, the alleged unreasonable restraint of trade is not plausibly alleged to be unreasonable,

whether under the Sherman Act or the Texas Antitrust Act. *See supra*, Section I.C. Fourth and finally, the *Noerr-Pennington* doctrine prohibits liability for state law claims in addition to federal law claims. *See supra*, Section I.D.; *Video Int'l Prod., Inc.*, 858 F.2d at 1084–85 (applying *Noerr-Pennington* to tortious interference claim).

Therefore, Plaintiff's claim under the Texas Antitrust Act against Indiegogo fails on the same bases as its claim under the Sherman Act against Indiegogo.

III.    **Civil Conspiracy Is Not A Claim, But Rather A Theory Of Vicarious Liability, And Indiegogo Cannot Be Liable For The Alleged Underlying Wrongs.**

Plaintiff's civil conspiracy claim should be dismissed because it is not a claim under Texas law. Instead, "civil conspiracy is a theory of vicarious liability and not an independent tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Because civil conspiracy is not a claim, but rather, a theory of vicarious liability, there are no damages for civil conspiracy. Instead, "the damages element refers not to the entire conspiracy itself but to some tortious act committed by a co-conspirator pursuant to the conspiracy." *Id*. Consequently, liability on the civil conspiracy theory "depends on injury from the underlying tort." *Id*. at 140. That is to say, the plaintiff must succeed in establishing liability for the underlying tort in order to recover on a civil conspiracy theory. *Id.*

To plead the civil conspiracy theory of vicarious liability, Plaintiff must allege facts meeting the following five elements: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Plaintiff, however, has failed to sufficiently plead any of the five elements.

First, for the reasons discussed *supra,* Section I.B, the alleged agreement here between Defendants is implausible and supported by no facts. Second, the alleged object to be accomplished is "denying [Plaintiff] access to the marketplace and to free trade by undertaking a monopolistic, disparaging, tortious course of action." Compl. ¶ 120. As discussed throughout this submission, including *supra,* Section I.B and I.C, Plaintiff failed to plead facts to remotely suggest that this is true. Third, again for the reasons discussed *supra,* Section I.B, the alleged "meeting of the minds" is implausible and supported by no facts. Fourth, Plaintiff alleges no "unlawful, overt acts" by Indiegogo. Instead, every action that Indiegogo is alleged to have done is either constitutionally protected or not prohibited by law. *See supra* Section I.A, I.C, and I.D. Fifth and finally, Plaintiff alleges no non-speculative damages that are fairly traceable to Indiegogo's conduct.

Even if those five elements could be satisfied by Plaintiff, its ability to recover from Indiegogo on a civil conspiracy theory requires it to prevail on an underlying tort. *Agar Corp., Inc.*, 580 S.W.3d at 142. The Complaint identifies three underlying torts: "antitrust violations, tortious interference with Coast Runner's economic relationships, and disparagement." Compl. ¶ 120. All three "underlying torts" are deficiently pleaded, and therefore cannot support a civil conspiracy theory of recovery. The alleged "antitrust violations" fail as a matter of law. *See supra* Section I. And the claims for tortious interference and business disparagement fail because they are brought only against an "unknown individual" and an "unknown entity" with no facts whatsoever to support them. Such generic pleading and fictional defendants cannot survive a motion to dismiss.

In sum, Plaintiff's attempt to hold Indiegogo liable through the civil conspiracy theory of vicarious liability fails on every possible ground. The Complaint falls short of meeting any of the

elements necessary to plead civil conspiracy, and all three alleged underlying wrongs cannot support liability. The claim should be dismissed.

**IV.     Indiegogo Is Immune From Liability For The Alleged Conduct Under Section 230 Of The Communications Decency Act.**

Plaintiff's Complaint should be dismissed because it seeks to hold Indiegogo liable for its decisions concerning the removal of third-party content on Indiegogo's crowdfunding platform. Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars claims that seek liability for such conduct.

Section 230(c)(1) of the CDA protects from liability a defendant who is "(1) the provider or user of an interactive computer service and (2) treated as a publisher or speaker of third-party content." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 792-93 (5th Cir. 2024). More specifically, Section 230(c)(1) shields from liability "decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)).

Plaintiff's allegations against Indiegogo meet both elements for immunity under Section 230(c)(1).

First, Section 230 offers immunity to "interactive computer service(s)." 47 U.S.C. § 230(c)(1). "Interactive computer services," in short, are websites that do not draft their own content, but rather, publish content that is prepared by third parties. *See Pickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646, 651 (E.D. Tex. 2006) ("Section 230(c) provides broad immunity for publishing content provided primarily by third parties); *see also Nichs. Servs., LLC v. Glassdoor, LLC*, — F. Supp. 3d —, 2024 WL 3898345, at *6 (N.D. Miss. Aug. 21, 2024) (defendant, "operating as a website, qualifies as an interactive computer service and is therefore afforded

protection under § 230."). Here, Plaintiff alleges that Indiegogo is a "crowdfunding platform," that operates by publishing third parties' fundraising campaigns on its website, that other third parties can then invest money into. Compl. ¶ 37. Such a website meets the first element for immunity under Section 230.

As to the second element, Indiegogo is immune if the challenged conduct is in connection with its role "as a publisher . . . of third-party content." *A.B. v. Salesforce, Inc.*, 123 F.4th at 792–93. Plaintiff alleges that Indiegogo removed Plaintiff's crowdfunding campaign from Indiegogo's website. The Fifth Circuit has held that "monitoring, screening, and deletion" of third-party content are "actions quintessentially related to a publisher's role" entitled to immunity under Section 230. *Doe v. MySpace, Inc.*, 528 F.3d at 420; *see also La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017) (finding defendant immune under Section 230 because all of plaintiff's claims sought to hold defendant "liable for decisions about the monitoring, screening, and deletion of user-generated content"); *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). And in this case, Plaintiff alleges that Indiegogo took exactly the role of a publisher with respect to Plaintiff's crowdfunding campaign: monitoring, screening, and ultimately removing the crowdfunding campaign for its website. Accordingly, Indiegogo cannot be liable for the complained-of activity, and the Complaint should be dismissed.

Indiegogo is immune from liability to Plaintiff's claims against it pursuant to Section 230 of the CDA, as all of Plaintiff's allegations relate to Indiegogo's decision to delete Plaintiff's user-generated content from the Indiegogo crowdfunding platform.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed as to Defendant Indiegogo, Inc.

Date: February 28, 2025

Respectfully submitted,

**PAUL HASTINGS LLP**

By: */s/ Paul R. Genender*
Paul R. Genender
Texas State Bar No. 00790758
paulgenender@paulhastings.com
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:        1(972) 936-7500
Facsimile:        1(972) 936-7501

Ryan Phair (*pro hac vice* pending)
ryanphair@paulhastings.com
2050 M Street NW
Washington, DC 20036
Telephone:        (202) 551-1751

*Attorneys for Defendant*
*INDIEGOGO, INC.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was electronically filed in compliance with local rules.  As such, this document was served on all known counsel who have consented to electronic service on this 28th day of February, 2025.

*/s/ Paul R. Genender*
Paul R. Genender

19