## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **COAST RUNNER, INC.,** <br> Plaintiff, <br><br> vs. <br><br> **KICKSTARTER, PBC; INDIEGOGO, INC.; LAUNCHBOOM, INC; JOHN DOES #1 AND #2**, <br> Defendants. | Case No. 7:24-CV-00326 |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT
## INDIEGOGO, INC'S MOTION TO TRANSFER OR COMPEL ARBITRATION

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
CAROLINE MERIDETH
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

## TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Introduction ...................................................................................................... 1

Background ...................................................................................................... 1

Legal Standard ................................................................................................ 3

Argument and Authorities ............................................................................... 4

   I.  Indiegogo's Terms of Use and Its Forum Selection Clause Do Not Govern This Action.. 4

   II.  Transfer to the Northern District of California Is Inappropriate ........................................ 6

      A.  The clause is not mandatory. ............................................................... 6

      B.  Public interest factors support retention of the claims against Indiegogo. ............ 8

      C.  Severance is inappropriate for similar reasons. ........................................ 11

   III.The Court Should Not Compel Arbitration. ................................................... 11

      A.  The parties never agreed to arbitrate antitrust claims in the Terms of Use. .............. 12

      B.  The arbitration clause neither delegates arbitrability nor covers Plaintiff's claims.... 15

      C.  Compelling arbitration will deprive Plaintiff of substantive antitrust rights. ............ 18

Conclusion and Prayer ................................................................................... 20

Certificate of Service ..................................................................................... 21

## INTRODUCTION

This case is about collusive, anticompetitive actions that violate the Sherman Act and the Texas Free Enterprise and Antitrust Act. It is not about any contract. Neither the existence nor validity of any contract between Plaintiff Coast Runner, Inc. ("Coast Runner") and any Defendant alters the antitrust analysis under any of Coast Runner's claims. Nevertheless, Defendant Indiegogo, Inc. ("Indiegogo") claims that forum selection and arbitration clauses in its Terms of Use ("Terms") govern this suit. Not so. Indiegogo argues that if any court can hear the case, it *must* be the Northern District of California and that an arbitration agreement controls Plaintiff's claims. But the Terms are irrelevant. The claims against Indiegogo do not arise out of the Terms or the parties' relationship. The claims would exist whether or not Plaintiff had any relationship with Indiegogo, much less agreed to the Terms. That alone is reason to deny Indiegogo's motion.

Myriad other reasons require denial. As to transfer, the purported forum selection clause is not mandatory; it permits litigation in other fora, only waiving personal jurisdiction and venue defenses in one forum. Second, public interests heavily favor retaining the case. As to arbitration, the antitrust "dispute" here is outside the contractual scope, thus the parties never contracted to arbitrate such claims. Further, while Indiegogo now argues otherwise, its arbitration clause never authorized an arbitrator to determine those claims' arbitrability, let alone hear and decide them.

## BACKGROUND[1]

For high-tech hardware products, the crowdfunding industry is a functional duopoly: Indiegogo and Defendant Kickstarter control virtually the entire market. The Defendant duopolists here engaged in collusive, anticompetitive behavior to the disadvantage and economic detriment of Plaintiff and its founders.

---

[1] Facts stated in this section are taken from Plaintiff's Original Complaint, ECF 1.

Plaintiff and its founders, Cody Wilson and Garret Walliman, spent two years developing the CR-1, a general-purpose desktop computer number controlled (CNC) milling machine. And they spent over six months and hundreds of thousands of dollars preparing for a crowdfunding campaign to launch their product to the market, raise capital, and prove the viability of Coast Runner as an independent enterprise. The CR-1 was a vast improvement on Wilson and Walliman's previous venture: a special purpose milling machine developed through Wilson's company, Defense Distributed. Unlike the special-purpose Ghost Gunner, which was developed specifically for firearm-parts milling, the CR-1 was designed with field engineers, repair technicians, and all-purpose at-home makers in mind. The CR-1 was designed from the ground up as a new product: it included an all-new power supply, purpose-designed circuit boards, innovative dampener technology and fixturing, from-scratch software platform, and numerous other improvements. The Biden administration's Department of Commerce gave the CR-1 a neutral export control classification number, reflecting that the CR-1 was not designed to be, and should not be classified as, a firearms manufacturing device.

Nevertheless, Kickstarter and Indiegogo, in a show of disapproval for Wilson and Walliman's separate, firearms-related ventures, illegally combined to exclude Plaintiff and the CR-1 from the crowdfunding market, leaving that uniquely beneficial source of funding inaccessible to Plaintiff. As a result, Plaintiff has missed out on millions of dollars of revenue—an infusion of capital that Plaintiff could have generated without surrendering equity ownership and without taking on debt, all while proving a market for the CR-1 and generating industry buzz around the new product. When crowdfunding works, everyone wins. The entrepreneur receives capital and publicity; the "backers," those who pledge funds, are the first to enjoy cutting-edge products; and the platform, such as Indiegogo or Kickstarter, takes a commission. Here, everyone lost instead.

After months of preparation, disclosures, marketing, testing, and investment, the CR-1 launched on Kickstarter on February 27, 2024. Over $500,000 in pledged dollars flowed in by the first hours of the campaign. Total 30-day campaign funds were projected to be millions of dollars. Then it stopped. Kickstarter suddenly and inexplicably ended the campaign, stripping Plaintiff of any benefit. Knowing Indiegogo had previously expressed interest in hosting the CR-1, Plaintiff turned to the other player in the duopoly. Indiegogo agreed to set up a replacement campaign practically overnight, committing to a whole-of-company effort and repeatedly reassuring Wilson and Walliman that it would not pull the rug out from under the CR-1 like Kickstarter had. Indiegogo's campaign launched on February 29 to resounding success. Then it stopped. That summer, Plaintiff learned why: Wilson and Walliman learned through industry connections made while preparing to launch the CR-1 that the duopoly's highest leaders communicated directly, agreeing to prevent Plaintiff's participation in the market they dominate and control.

Defendants "engaged in a conspiracy that restrained trade in a particular market." *MM. Steel, L.P. v. JSW Steel (USA)*, 806 F.3d 835, 843 (5th Cir. 2015) (defining elements of a section 1 Sherman Act claim) (cleaned up). Plaintiff sued Kickstarter, Indiegogo, and a consultant called Launchboom that participated in or facilitated the collusion. Kickstarter and Indiegogo moved to dismiss. ECF 17, 18. Kickstarter also moved, under its Terms of Use, to transfer Plaintiff's claims to the Southern District of New York. ECF 19. Indiegogo similarly moved to transfer the claims against it to the Northern District of California and to compel arbitration. ECF 16.

## LEGAL STANDARD

Transfer is permitted to "any other district or division . . . to which all parties have consented." 28 U.S.C. § 1404(a). This statute "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). A forum-selection clause applies only if it is mandatory, is valid, and

covers the plaintiff's claims. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768-71 (5th Cir. 2016). A party opposing enforcement must "clearly show that enforcement would be unreasonable and unjust," invalidity due to "fraud or overreaching," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), or that the "public interest" weighs against transfer. *Atl. Marine*, 571 U.S. at 64.

A two-prong inquiry governs whether to compel arbitration: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy overrides the agreement. *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). The first prong has two parts: (1) "whether a valid agreement to arbitrate exists" and (2) "whether the dispute falls within that agreement." *Id.* Courts generally decide those initial questions. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

## ARGUMENT AND AUTHORITIES

The motion to transfer or compel arbitration should be denied. Plaintiff's claims do not arise from the Terms, do not sound in contract, and do not touch on, require reference to, or necessitate the application of those Terms. Moreover, those Terms impose no mandatory venue requirement, and the public interest strongly favors retaining this case. Finally, the Terms do not demand arbitration of Plaintiff's antitrust claims, which the parties never contracted to arbitrate. The claims fall outside the scope and delegation provision of the arbitration clause in any event.

## I.    Indiegogo's Terms of Use and Its Forum Selection Clause Do Not Govern This Action.

Plaintiff's claims are outside the scope of Indiegogo's forum selection clause because those claims do not depend on the existence, interpretation, or application of the Terms. The clause provides that "legal disputes not subject to arbitration will be handled in San Francisco." But because Plaintiff's antitrust claims have nothing to do with the Terms and would have accrued notwithstanding the Terms, the forum selection clause is inapplicable. Indiegogo insists that "Plaintiff's claims plainly relate to the Terms of Use." ECF 16 at 8. They do not. Indiegogo says

4

this case is about its "right to suspend or terminate a campaign" to be decided under California law. *Id.* at 9. It is not. Because Plaintiff's claims do not require application or interpretation of the Terms, the choice of law provision is wholly inapplicable to and does not govern Plaintiff's claims. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003); *see also Mission Specialty Pharmacy, LLC v. OptumRx, Inc.*, 154 F. Supp. 3d 453, 458 (W.D. Tex. 2015). Regardless, California law provides that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435, 442 (Cal. Ct. App. 1996). The same should be true when a statutory cause of action requires no interpretation of the contract, as here. As in *Bancomer*, the "claims do not relate to the rights and responsibilities accorded" by the agreement. *Id.*

A Sherman Act section 1 claim requires the plaintiff to "show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel*, 806 F.3d at 843. Texas's parallel statute "requires proof of 1) a contract, combination, or conspiracy, 2) which is unreasonable, and 3) has an adverse effect on competition in the relevant market." *W. Mktg., Inc. v. AEG Petrol., LLC*, 616 S.W.3d 903, 915 (Tex. App.—Amarillo, 2021), *modified on reh'g*, 621 S.W.3d 88 (2021). Neither claim requires reference to or interpretation of Indiegogo's Terms. Plaintiff could bring its claims even if it had no contract with any Defendant. Defendants would be liable if Kickstarter and Indiegogo had colluded to exclude Plaintiff from the market before it agreed to anything. Thus, Indiegogo's argument that "the Terms of Use and Plaintiff's claims here are closely related" is unavailing and demonstrably wrong. Plaintiff does not allege that Indiegogo violated its Terms—nor need it do so to prove an illegal conspiracy like the one here. The forum selection clause thus does not apply: Plaintiff's claims do not depend on the existence of a contract, reference any contract, or implicate the interpretation of any contract.

II.    **Transfer to the Northern District of California Is Inappropriate.**

In addition to the above, the Court should deny Indiegogo's motion to transfer for two discrete reasons. First, because the forum selection clause is not mandatory. The clause does not affirmatively mandate a particular forum, it merely permits proceedings in California pursuant to a personal jurisdiction waiver. And second, because public interest factors strongly favor this Court's retention of the case and the claims; in other words, this is an extraordinary case.

A court deciding a motion to transfer based on a forum selection clause must first determine whether the clause is mandatory or permissive. *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020). This analysis includes whether the claims are within the clause's scope. Next, the court determines whether public-interest factors weigh against transfer. *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 543 (W.D. Tex. 2014).

A.    **The clause is not mandatory.**

Indiegogo's contention that the claims against it *must* be heard in California fails under the language of the Terms. A header states: "Legal Disputes Not Subject to Arbitration Will Be Handled In San Francisco, CA and Subject to California Law." This body text follows that header:

> For any action not subject to arbitration, you and Indiegogo agree to submit to the personal jurisdiction of a state court located in San Francisco, CA or the United States District Court for the Northern District of California. The Terms and the relationship between you and Indiegogo shall be governed in all respects by the laws of the State of California, without regard to its conflict of law provisions.

Neither header nor body requires litigation in *any* forum, especially when read together. The section header does not "affirmatively require" litigation in the Northern District of California. Indiegogo relies on the section header to argue that a mandatory forum selection clause exists. That is insufficient under California law. First, the language of the heading is not mandatory and exclusive. And second, contracts of adhesion are interpreted against the drafting party.

6

The key heading language—"will be handled in San Francisco"—is neither mandatory nor exclusive. If a clause "does not expressly mandate litigation exclusively in a particular forum," then it is permissive only. *Animal Film, LLC v. D.E.J. Prods., Inc.*, 123 Cal. Rptr. 3d 72, 76 (Cal. Ct. App. 2011). Thus, California law requires "exclusivity" language. *Id.* at 76-77. California courts have only enforced forum selection clauses as mandatory when they use words and phrases such as "exclusive jurisdiction," or require litigation "only in" a particular court. *Id.* Texas law is similar. A provision is permissive unless it expressly prohibits litigation in other jurisdictions or expressly provides exclusive jurisdiction. *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 325 (Tex. App.—Austin 1999, pet. denied). A provision was mandatory when it included a promise "not to bring any proceeding" in "any other court." *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014). Here, the header says disputes "will" be litigated in San Francisco without expressly excluding other fora, granting exclusive jurisdiction, or providing that disputes will be litigated *only* in San Francisco. No clear language expresses that San Francisco is the only forum allowed.

The clause's permissive nature is manifest when the heading and the substantive provision are read together. The latter provides that the parties "agree to submit to the personal jurisdiction of" courts in San Francisco, a classic permissive clause that does no more than waive objections to personal jurisdiction. *See e.g. Animal Film*, 123 Cal. Rptr. 3d at 76; *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 629-30. (Tex. App.—Texarkana 2008, pet. denied). Thus, the provision is a personal jurisdiction waiver and at most a permissive forum selection clause.[2] Such language never mandates venue. *Starlight Ridge S. Homeowners Assn. v. Hunter-Bloor*, 99 Cal. Rptr. 3d 20, 25

---

[2] Texas courts may look to headers for interpretive guidance, but "the greater weight must be given to the operative contractual clauses of the agreement." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015) (citation omitted). If applying Texas law, this Court must "consider the [provision's] operative language" to "determine whether it is" mandatory. *Id.*

(Cal. Ct. App. 2009); *My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.). If the clause mandated exclusive venue in California, then the personal jurisdiction waiver would be surplusage. To avoid that result, as this Court must, the clause must instead create permissive venue in California and waive any personal jurisdiction defense there.

Thus, putting the section's heading in context, and given its lack of express exclusivity, venue is not mandatory in California. Any ambiguity in a contract of adhesion is resolved against the drafter. *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016); *Ramsay*, 254 S.W.3d at 631. Thus, even if the provision as a whole, notwithstanding the operative paragraph's words and absence of exclusivity language, could have two reasonable interpretations, Plaintiff's interpretation must prevail. Even if the word "will," without indicia of exclusivity, supports Indiegogo's interpretation as reasonable, the Court should deny transfer.

**B.    Public interest factors support retention of the claims against Indiegogo.**

Public policy factors weigh against transfer. The Court should consider "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Sobel ex rel. SolarWinds Corp. v. Thompson*, No. 1:21-CV-272, 2023 WL 4356066, at *7 n.6 (W.D. Tex. July 5, 2023) (citation omitted); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016). "[C]ourts have also considered judicial economy in the analysis of weighing the public interest." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 562 (Bankr. N.D. Ga. 2017) (*citing Bollinger Shipyards Lockport v. Huntington Ingalls Corp.*, No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015)).

Judicial economy overwhelmingly disfavors transfer. *Atlantic Marine* is "based on its facts: one plaintiff, one defendant and all of the claims—not just some—being subject to the forum selection clause." *Id.* The most efficient approach is to deny transfer where parties rely on

competing forum-selection clauses, avoiding the inefficient scenario of forcing cases to proceed piecemeal around the country. Although Plaintiff disagrees that any forum-selection clause applies, judicial economy is not served by forcing this Court to adjudicate an additional (and unbriefed) argument that Indiegogo's forum-selection clause controls over Kickstarter's. Because Defendant Indiegogo has not advanced judicial economy as an independent ground for transfer, the Court should deem any counterargument waived. *See, e.g.*, *Smith v. Tex. DFPS. Child Protective Servs.*, No. CIVA SA-08-CA-940XR, 2009 WL 2998202, at *3 (W.D. Tex. Sept. 15, 2009) (finding briefing waiver). The remaining factors favor Plaintiff.

**1.** The relative congestion of the courts suggest transfer is inappropriate. This factor examines "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The Midland/Odessa Division is one of the least congested divisions in the Western District: only 345 civil cases were filed in the Division last year, the second fewest after the Pecos Division.[3] According to recent statistics, the Northern District of California had 870 pending cases per judgeship, while this District has 790 pending cases per judgeship.[4] The burden on the transferee court would be far greater than on this court, which had only 286 open civil cases as of March 18, 2025 per CM/ECF.

**2.** The local interest in resolving the harm to a Texas corporation and its Texas founders is high. The action calls into question the work that Plaintiff is doing in this district. The CR-1 was destined to be distributed from this district and all the work that gave rise to the CR-1 and the attempted crowdfunding campaigns took place here. *See In re Hoffmann-La Roche Inc.*, 587 F.3d

---

[3] W.D. Tex., Calendar Year Statistical Report (2024), https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2024/Calendar%20Year%202024%20Statistical%20Public%20Report.pdf.

[4] *See* U.S. Dist. Cts., National Judicial Caseload Profile 37, 66 (Sept. 30, 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf.

1333, 1336 (Fed. Cir. 2009). Moreover, when, as here, "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id*. at 1138. The harm that resulted from Defendants' conspiracy to violate antitrust laws continues to affect persons in this district. That conclusion is entitled to respect.

**3.** As noted in Part I, this dispute is not governed by California law because the claims against Indiegogo do not arise from or relate to the Terms. Therefore, Plaintiff's election to proceed with a claim under Texas's antitrust law is valid and permissible. Indiegogo's conclusory argument to the contrary, ECF 16 at 10-11, is unavailing. This forum is more familiar with that law and transferring the case to California would contravene public interests. Indiegogo's observation that federal courts routinely apply law from outside their forum state fails to account for the fact that a Texas-based judge is inherently more familiar with Texas law. *See, e.g.*, WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3854 n.22 (4th ed.) (providing an example where a "[d]istrict court's familiarity with Massachusetts law, which governed in the case, weighed against transfer").

**4.** Denying transfer also avoids unnecessary conflicts of laws. By relying on competing forum-selection clauses, Defendants Kickstarter and Indiegogo invite unnecessary conflict-of-laws problems. Indeed, Defendant Kickstarter argued in its transfer motion (at 14) that the entire case should be transferred to the Southern District of New York. Yet Defendant Indiegogo argues that the applicable law is that of California, not New York or Texas. *Cf., e.g.*, *Arenas v. Calhoun*, No. SA-16-CV-1203-XR, 2017 WL 4564024, at *8 (W.D. Tex. Oct. 12, 2017) (transferring from Texas to Georgia district courts "risks creating a conflict of laws in the application of foreign law because the Southern District of Georgia would be obligated to apply two different circuit precedents to the overlapping issues of these two cases."); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 677-78 (9th Cir. 2023) (explaining that unlike California

law, a claim for tortious interference with business relations under New York law does not require the plaintiff to show an "independent wrongful act")). In any event, Defendant Indiegogo relies (at 13) on its choice-of-law provision. As explained above, Texas law governs here.

### C.    Severance is inappropriate for similar reasons.

The Court should reject Defendant Indiegogo's request to "chop up" this litigation. *Hanover Prest-Paving Co. v. Staten Island Bldg. Prods. Dist. Inc.*, No. 1:21-CV-01672, 2024 WL 1890362, at *7 (M.D. Pa. Apr. 30, 2024). Defendant Indiegogo insists (at 11-12) that it should be severed and permitted to litigate in the Northern District of California. But that result unfairly forces plaintiffs to litigate similar claims against defendants in at least two places at once. *See, e.g., id.* Defendant Kickstarter suggests alternatively that the entire case should be transferred to New York, but Defendant Indiegogo makes no similar argument and does not indicate consent to that venue. In view of the defendants' reliance on competing forum-selection clauses, severance is improper. *See, e.g., United Prod. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 563 (E.D. Pa. 2000) (denying a motion to sever because defendants' claims were "intertwined" and a partial transfer would require the same issues to be litigated in two places).

### III.   The Court Should Not Compel Arbitration.

This Court should deny Indiegogo's motion to compel arbitration because to do so would require the Court to find a mutual agreement to arbitrate. But Plaintiff never anticipated arbitrating—nor agreed to arbitrate—antitrust claims by signing Indiegogo's Terms. And the authority for an arbitrator to arbitrate a dispute is derived only from the parties' agreement to "submit such grievances to arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986) (internal citations omitted). The moving party must prove by a preponderance of the evidence the existence of an agreement to arbitrate particular claims. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-503 (5th Cir. 2019). The Court must conduct three analytical steps. The

first is "contract formation—whether the parties entered into any arbitration agreement at all." *Kubala*, 830 F.3d at 202. If not, the motion must be denied. When, as here, the moving party relies on a delegation clause, the second step "is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* If not, the Court proceeds to the third step, which "involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* at 201.

Here, Plaintiff never formed a valid agreement to arbitrate antitrust claims because it could not have anticipated submitting those claims to arbitration. Even if the Court disagrees, Indiegogo is wrong that the case should be referred to an arbitrator to decide the issue of arbitrability because the arbitration clause does not unmistakably delegate that power to an arbitrator. In any event, the arbitration clause does not embrace the antitrust claims against Indiegogo, and to decide otherwise would deprive Plaintiff of substantial rights and would therefore be against public policy.

## A.    The parties never agreed to arbitrate antitrust claims in the Terms of Use.

As to the first step, it "is for the courts and not the arbitrator to decide in the first instance" whether "the parties entered into an arbitration agreement in the first place." *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011). That is so regardless of any delegation clause. *Edwards v. Doordash, Inc.,* 888 F.3d 738, 744 (5th Cir. 2018). A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648-49 (cleaned up); *Mondragon v. Sunrun Inc.*, 320 Cal. Rptr. 3d 492, 499 (2024); *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023). While "there is a strong federal policy favoring arbitration," this policy does not apply "to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (cleaned up). Whether an arbitration agreement exists is a question of state contract law. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)

(cleaned up). Indiegogo contends that California law applies, but the same result is obtained whether applying California or Texas law. ECF 16 at 15. At bottom, Indiegogo failed to demonstrate that there was any agreement to arbitrate Plaintiff's antitrust claims simply because Plaintiff assertedly acceded to the Terms.

Asking only whether a "clickwrap agreement" is a valid contract, Indiegogo concludes Plaintiff "enter[ed] into an agreement to arbitrate with Indiegogo" by agreeing to the Terms. ECF 16 at 20. Contrary to Indiegogo's assertion, the question is not merely one of "contract formation." *Id.* at 13. The mere existence of *an* arbitration clause does not require that *this* antitrust dispute be arbitrated. *See Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 473 (2020) ("No authority permits sending a matter to arbitration simply because the same parties agreed to arbitrate a different matter."); *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018) ("Arbitration is a creature of contract between consenting parties."). After all, "[t]he object of an arbitration clause is to implement a contract, not to transcend it." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.,* 501 U.S. 190, 205 (1991). This analysis is distinct from the question of the arbitration clause's scope itself, discussed below.

The Tenth Circuit has considered similar circumstances. When Coors Brewing brought antitrust claims against its Canadian partner, it argued that "protecting its interest in competition in the United States and North American beer markets" was not subject to the parties' arbitration agreement, as would be an effort to "protect[] its contractual rights." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1513 (10th Cir. 1995). Molson, the party seeking to compel arbitration, argued that *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), compels all antitrust claims to arbitration. *Coors*, 51 F.3d at 1514. The Tenth Circuit rejected Molson's characterization of *Mitsubishi*. Instead, it explained that "the Supreme Court's holding

13

in *Mitsubishi* [is limited] to antitrust claims that have a reasonable factual connection to the contract," because "[a] dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims." *Id.* at 1515-16.

In *Mitsubishi*, the Court agreed with the First Circuit that antitrust claims were arbitrable because they "were closely related to the contract [in that] they turned upon specific contractual provisions." *Id.* at 1515. The analysis looks to "whether the factual allegations underlying" the claims have a reasonable connection to the contract. *Id.* 1515-16. Claims that do not rest on facts that "touch[] specified provisions of the agreement," and thus "do not implicate the contract," cannot be compelled to arbitration. *Id.* at 1516. *Mitsubishi* "did not proclaim that all disputes between parties who include an arbitration clause in their contracts are subject to arbitration." *Id.* The Tenth Circuit noted the common-sense nature of this analysis. If "two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract": with respect to the alleged wrong, "it is simply fortuitous that the parties happened to have a contractual relationship." *Id.* at 1516.

California and Texas rely on similar reasoning: "[a]n arbitration agreement is tied to the underlying contract containing it, and applies only where a dispute has its real source in the contract." *Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 473 (2020) (citation omitted); *see also Tex. Petrochems. LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 885 (Tex. App.—Beaumont 2009, no pet.) ("Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it."). Arbitration need not be compelled "with respect to disputes unrelated to the contract in which the provision appears." *Moritz*, 268 Cal. Rptr. 3d at 476 (citing 9 U.S.C. § 2); *see also Ford v. NYLCare Health*

*Plans of Gulf Coast, Inc.*, 141 F.3d 243, 247 (5th Cir. 1998) (explaining that a claim is arbitrable if it is "so interwoven with the contract that it could not stand alone, but is not arbitrable if it is completely independent of the contract and could be maintained without reference to a contract").

Plaintiff's antitrust claims have no "reasonable factual connection" to the Terms. *Coors*, 51 F.3d at 1516. Indiegogo's collusive, anticompetitive behavior—agreeing with Kickstarter and Launchboom to boycott Plaintiff from the crowdfunding market—could have occurred regardless of whether Plaintiff acceded to any terms. Said differently, the contract's existence is not a fact underlying Plaintiff's claims and its interpretation makes no difference to the merits. At bottom, Plaintiff's claims under the Sherman Act and the Texas Free Enterprise and Antitrust Act do not touch or turn on specified provisions of the Terms, they do not seek to protect contractual rights, the resolution of them does not require reference to the Terms, and they do not have their true source in the Terms. As in *Coors*, these claims relate to the crowdfunding market generally and could have been brought by any consumer with standing, regardless of whether they were parties to the Terms. *Id.* at 1517. No valid agreement to arbitrate antitrust claims exists and the Court should deny Indiegogo's motion.

**B.    The arbitration clause neither delegates arbitrability nor covers Plaintiff's claims.**

Plaintiff never agreed to arbitrate its antitrust claims; the inquiry should end there. In any event, arbitrability should be determined by the Court because the delegation clause does not clearly and unambiguously delegate whether *these* claims are arbitrable. "[C]ourts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551-552 (5th Cir. 2018); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And delegation is a threshold issue. *Arnold*, 890 F.3d at 552. Courts read all contract provisions in harmony, such that each informs the other and so that no portion of the contract is rendered surplusage. *Starlight Ridge S.*

15

*Homeowners Assn.*, 99 Cal. Rptr. 3d at 25; *My Cafe-CCC, Ltd.*, 107 S.W.3d at 866. This arbitration clause does not evince any intent to arbitrate Plaintiff's antitrust claims: an arbitrator lacks authority under the Terms to hear and decide the claims against Indiegogo, let alone their arbitrability.

The arbitration clause's first relevant paragraph provides:

This section is intended to be interpreted broadly and governs any and all disputes between us, including but not limited to claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . . .

Ex. C § 19. But the second provides an important limitation:

The arbitrator . . . shall have exclusive authority to resolve all disputes *arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms*, . . . including but not limited to any claim that all or any part of these Terms, Additional Policies, or Privacy Policy is void or voidable, whether a claim is subject to arbitration . . . .

*Id.* (emphasis added). Thus, the contract provides that only disputes specifically "arising from or related to" the Terms are covered by the general description of disputes to be arbitrated. The paragraphs above must be read together, each informing the interpretation of the other. *Cal. Union Square L.P. v. Saks & Co. LLC*, 286 Cal. Rptr. 3d 115, 119 (Cal. Ct. App. 2021) (citing CAL. CIV. CODE § 1641); *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023). And the "particular" controls the "general," as it does in any contract. *Cal. Union Square*, 286 Cal. Rptr. 3d at 120 (citation omitted); *Mosaic Baybrook One*, 674 S.W.3d at 257 ("[A] specific contract provision controls over a general one."). So, taking the provisions together, the parties intended to arbitrate all disputes that "aris[e] out of or relat[e] to the interpretation, applicability, enforceability, or formation of the [] Terms" whether those disputes sound in "contract, tort, statute, fraud, misrepresentation or any other legal theory." And the arbitrator is thus entitled to

16

decide the arbitrability of claims that arise out of the Terms. As noted above, however, a cause of action divorced from a contract is outside that contract's arbitration provision.

These provisions limit the arbitrator's authority, including his or her authority to determine arbitrability, to "disputes arising out of or relating to" the Terms. But the antitrust claims against Indiegogo do not "arise out of or relate to" the Terms. Plaintiff's Sherman Act and Texas Free Enterprise and Antitrust Act claims exist regardless of the Terms and whether Plaintiff agreed to them. They do not require interpretation of or reference to the Terms. Plaintiff's claims do not arise from a "dispute between [Indiegogo and Coast Runner]" that sounds in contract or even in tort, but instead seek to hold Indiegogo accountable for the illegal combination it participated in that impeded Plaintiff's right to participate in a competitive marketplace. *See Coors*, 51 F.3d at 1513 (antitrust claims that anyone with standing could bring and that seek to "protect[ an] interest in competition in" certain beer markets are not subject to arbitration). Defendant fails to acknowledge the nature of Plaintiff's antitrust claims, which are not about contractual rights. Plaintiff sued under the Sherman Act to deter "conduct which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). And Plaintiff seeks "preservation of the open, competitive market." *M.C. Mfg. Co., Inc. v. Tex. Foundries, Inc.*, 517 F.2d 1059, 1064 (5th Cir. 1975); TEX. BUS. & COM. CODE § 15.04 (stating the Act "maintain[s] and promote[s] economic competition in trade and commerce," and "provide[s] the benefits of that competition to consumers in the state"). The antitrust claims are outside the arbitration clause.

Likewise, an arbitrator cannot decide arbitrability because the dispute does not depend on the existence of or arise out of any relationship with Indiegogo. Unlike broad delegation clauses, this delegation clause does not evidence a clear intention to delegate all questions of arbitrability to the arbitrator and instead carves out disputes related to the interpretation, enforceability,

formation, or voidability of the Terms, Additional Policies, and the Privacy Policy to the arbitrator, and delegates only the arbitrability of *those* claims. *Contra* ECF 16 at 21. Specifically, *Kubala* is inapposite, as that was an FLSA action that directly related to the employment relationship formalized in part by the contract containing the arbitration clause. 830 F.3d at 200-01. The claim therefore arose from the agreement between the parties. The breadth of the delegation clause granted jurisdiction over arbitrability to the arbitrator because of that relationship. Similarly, in *Matter of Willis*, the plaintiff sued under the Truth in Lending Act for alleged misstatements in the loan agreement that contained the arbitration clause. 944 F.3d 577, 579 (5th Cir. 2019). In other words, that dispute arose directly from the contract. Since no relationship between the contract and the dispute exists in this case, those authorities are inapposite. Indiegogo's motion must be denied.

**C.    Compelling arbitration will deprive Plaintiff of substantive antitrust rights.**

Forcing Plaintiff to arbitrate its antitrust claims will wrongly deprive it of significant remedies, including treble damages, mandatory attorney's fees, and discovery. "Arbitration provisions relating to federal statutory claims are valid" only if they do not "waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the plaintiff may effectively vindicate his statutory rights." *Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 974 (S.D. Tex. 2018) (cleaned up). Only if "the *prospective* litigant effectively may vindicate its statutory cause of action in the arbitral forum," will the statute "serve both its remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637. "[R]emedies provided by the antitrust statute cannot be contractually waived." *Kristian v. Comcast Corp.*, 446 F.3d 25, 46 (1st Cir. 2006).

Here, the JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules") may limit Plaintiff's remedies, contradicting federal law. The Sherman Act mandates treble damages, costs, and attorneys' fees upon a finding of liability. 15 U.S.C. § 15(a); *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) (explaining the statute's "mandatory trebling"). The statute's

dual purpose both compensates victims of antitrust violations and deters violators. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977). Thus, "Congress has told us that it is willing to go, in certain respects, beyond the normal limits of law in advancing its goals of deterring and remedying unlawful trade practice." *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013).

But JAMS Rule 24(c) provides that "[t]he Arbitrator *may* grant any remedy or relief that is just and equitable and within the scope of the Parties' Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy." (emphasis added). Proceeding with arbitration may severely limit Plaintiff's entitlement to treble damages because, under those rules, damages awards are purely permissive, as shown by the use of the word "may."

Second, an award of attorney's fees under the Sherman Act is mandatory and the Texas Free Enterprise and Antitrust Act requires an award of treble attorney's fees upon a finding of willful conduct. *See* 15 U.S.C. § 15(a); TEX. BUS. & COM. CODE § 15.21. The JAMS Rules have no mandatory award and only provide that attorneys' fees "*may*" be allocated. *See* Rule 24(g). *Mitsubishi* similarly addressed the enforcement of arbitration of international contract disputes under the United Nations Convention. 473 U.S. at 638. The Court determined that international arbitration would provide an adequate mechanism for antitrust recovery because the tribunal should "be bound to decide that dispute in accord with the national law giving rise to the claim" and the Convention "reserved to each signatory country the right to refuse enforcement of an award where the recognition or enforcement of the award would be contrary to the public policy of that country." *Id.* (cleaned up). No such procedure is available for JAMS. *See* JAMS Rules, *available at* https://www.jamsadr.com/rules-comprehensive-arbitration; Rule 34 (appeal procedure by agreement); 9 U.S.C. § 10 (permitting vacation of arbitration award where award was procured by fraud or undue means, corruption, misconduct, or arbitrator exceeded their powers). Forcing

Plaintiff to proceed with arbitration will prevent Plaintiff from vindicating "its statutory cause of action in the arbitral forum" and prohibit both the Sherman Act and Texas Free Enterprise Act from "serv[ing] both [their] remedial and deterrent function[s]." *Mitsubishi*, 473 U.S. at 637.

Finally, Plaintiff's ability to conduct discovery will be severely limited. The JAMS Rules provide for one deposition per party, and third-party discovery is almost non-existent and requires arbitrator approval. *See* Rule 17(b) ("Each Party may take one deposition of an opposing Party or of one individual under the control of the opposing Party."); Rule 17(e) ("In a consumer or employment case, the Parties may take discovery of third parties with the approval of the Arbitrator."). Although the parties are required to "voluntarily" exchange non-privileged documents relevant to the dispute, Rule 17, this exchange neither anticipates nor includes depositions. Testimony from numerous actors will be critical for Plaintiff's antitrust claims. As noted in the joint Rule 26(f) report, Plaintiff needs more than 10 depositions, including John Does #1 and #2. ECF 24. Arbitration will severely limit the discovery Plaintiff is entitled to under both the Federal and Texas Rules. *See* Fed. R. Civ. P. 30-36. And while some arbitral fora's informal discovery procedures have been found adequate, JAMS procedures are inadequate here. *Contra Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31 (1991) (explaining that NYSE rules provided extensive document production, information requests, depositions, and subpoenas). Courts have also been "liberal in allowing discovery in antitrust cases because of the public importance of the decision, the need of large corporate defendants to know which of their many activities are attacked, the issue narrowing function of discovery, and the fact that one side may have all the facts and the ability to conceal those facts from its adversary." *Bass v. Gulf Oil Corp.*, 304 F. Supp. 1041, 1046-47 (S.D. Miss. 1969). Compelling arbitration here defeats that policy.

### CONCLUSION AND PRAYER

The Court should deny Indiegogo's motions to transfer and to compel arbitration.

March 21, 2025.                              Respectfully submitted.

                                            /s/ Christopher D. Hilton
                                            Judd E. Stone II (TX 24076720)
                                            Christopher D. Hilton (TX 24087727)
                                            Ari Cuenin (TX 24078385)
                                            Caroline Merideth (TX 24091501)
                                            Cody C. Coll (TX 24116214)
                                            **STONE HILTON PLLC**
                                            600 Congress Ave., Ste. 2350
                                            Austin, TX 78701
                                            Telephone: (737) 465-3897
                                            judd@stonehilton.com
                                            chris@stonehilton.com
                                            ari@stonehilton.com
                                            caroline@stonehilton.com
                                            cody@stonehilton.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on March 21, 2025, via the Court's CM/ECF system.

                                            /s/ Christopher D. Hilton
                                            Christopher D. Hilton