UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **COAST RUNNER, INC.**, <br> Plaintiff, <br><br> vs. <br><br> **KICKSTARTER, PBC; INDIEGOGO, INC.; LAUNCHBOOM, INC; JOHN DOES #1 AND #2**, <br> Defendants. | Case No. 7:24-CV-00326 |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT
<u>KICKSTARTER, PBC'S MOTION TO TRANSFER OR SEVER</u>**

Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Caroline Merideth
Cody C. Coll
**Stone Hilton PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i
Introduction ..................................................................................................................... 1
Background ..................................................................................................................... 1
Legal Standard ................................................................................................................ 3
Argument and Authorities ............................................................................................... 4
    I.   Kickstarter's Terms of Use and Its Forum Selection Clause Do not Govern This Action. 4
    II.  Transfer to the Southern District of New York Is Inappropriate. ....................................... 7
    III. Severance Is Inappropriate for Similar Reasons. ............................................................. 11
Conclusion and Prayer .................................................................................................. 12
Certificate of Service ..................................................................................................... 12

## INTRODUCTION

This case is about collusive, anti-competitive actions that violate the Sherman Act and the Texas Free Enterprise and Antitrust Act. Neither the existence nor validity of any contract between Plaintiff Coast Runner, Inc. ("Coast Runner") and any Defendant alters the antitrust analysis under any of Coast Runner's claims. Nevertheless, Defendant Kickstarter, PBC ("Kickstarter") claims that the forum selection clause in its Terms of Use ("Terms") governs this suit. Not so. Kickstarter argues that if any court can hear the case, it *must* be the Southern District of New York. But the contract containing that provision is irrelevant to the present action. The claims against Kickstarter do not arise out of the Terms, or, indeed, even out of Plaintiff's "use or non-use of Kickstarter." In other words, the claims would exist whether or not Plaintiff had any relationship with Kickstarter, let alone agreed to the Terms. That is reason enough to deny Kickstarter's motion.

## BACKGROUND[1]

For high-tech hardware products, the crowdfunding industry is a functional duopoly: Kickstarter and Defendant Indiegogo, Inc. control virtually the entire market. The Defendant duopolists here engaged in collusive, anticompetitive behavior to the disadvantage and economic detriment of Plaintiff and its founders.

Plaintiff and its founders, Cody Wilson and Garret Walliman, spent two years developing the CR-1, a general-purpose desktop computer number controlled (CNC) milling machine. And they spent over six months and hundreds of thousands of dollars preparing for a crowdfunding campaign to launch their product to the market, raise capital, and prove the viability of Coast Runner as an independent enterprise. The CR-1 was a vast improvement on Wilson and Walliman's previous venture: a special purpose milling machine developed through Wilson's

---

[1] Facts stated in this section are taken from Plaintiff's Original Complaint, ECF 1.

company, Defense Distributed. Unlike the special-purpose Ghost Gunner, which was developed specifically for milling firearm parts, the CR-1 was designed with field engineers, repair technicians, and all-purpose at-home makers in mind. The CR-1 was designed from the ground up as a new product: it included an all-new power supply, purpose-designed circuit boards, innovative dampener technology and fixturing, from-scratch software platform, and numerous other improvements. The Biden administration's Department of Commerce gave the CR-1 a neutral export control classification number, reflecting that the device was not designed to be, and should not be classified as, a firearms manufacturing device.

Nevertheless, Kickstarter and Indiegogo, in a show of disapproval for Wilson and Walliman's separate, firearms-related ventures, illegally combined to exclude Plaintiff and the CR-1 out of the crowdfunding market, leaving that uniquely beneficial source of funding inaccessible to Plaintiff. As a result, Plaintiff has missed out on millions of dollars of revenue, an infusion of capital that Plaintiff could have generated without surrendering equity ownership and without taking on debt, all while proving a market for the CR-1 and generating industry buzz around the new product. When crowdfunding works, everyone wins. The entrepreneur receives capital and publicity; the "backers," who pledge funds, are the first to enjoy cutting-edge products; and the platform, such as Indiegogo or Kickstarter, takes a commission. Here, everyone—except the illegally colluding conspiracy—instead lost.

After months of preparation, disclosures, marketing, testing, and investment, the CR-1 launched on Kickstarter on February 27, 2024. Over $500,000 in pledged dollars flowed in during the first hours of the campaign. Total 30-day campaign funds were projected to be millions of dollars. Then it stopped. Kickstarter suddenly and inexplicably ended the campaign, stripping Plaintiff of any benefit. Knowing Indiegogo had previously expressed interest in hosting the CR-

1, Plaintiff turned to the other player in the duopoly. Indiegogo agreed to set up a replacement campaign practically overnight, committing to a whole-of-company effort and repeatedly reassuring Wilson and Walliman that it would not pull the rug out from under the CR-1 like Kickstarter had. Indiegogo's campaign launched on February 29 to resounding success. Then it stopped. That summer, Plaintiff learned why: Wilson and Walliman learned through industry connections that the duopoly's highest leaders communicated directly, agreeing to prevent Plaintiff's participation in the market they dominate and control.

Defendants "engaged in a conspiracy that restrained trade in a particular market." *MM. Steel, L.P. v. JSW Steel (USA)*, 806 F.3d 835, 843 (5th Cir. 2015) (defining elements of a section 1 Sherman Act claim) (cleaned up). Plaintiff sued Kickstarter, Indiegogo, and a consultant company called Launchboom that participated in or facilitated the collusion. Kickstarter and Indiegogo moved to dismiss. ECF Nos. 17, 18. Indiegogo also has moved to transfer Plaintiff's claims to the Northern District of California or to compel arbitration, both under its Terms. ECF 16. Kickstarter has moved this court, pursuant to its own Terms, to transfer the case to the Southern District of New York or, alternatively, to sever the claims against it. ECF 19.

## LEGAL STANDARD

Transfer is permitted to "any other district or division . . . to which all parties have consented." 28 U.S.C. § 1404(a). This statute "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). A forum-selection clause applies only if the clause is mandatory, is valid, and covers the plaintiff's claims. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768-71 (5th Cir. 2016). A party opposing enforcement must "clearly show that enforcement would be unreasonable and unjust," invalidity due to "fraud or overreaching," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), or that the "public interest" weighs against transfer, *Atl. Marine*, 571 U.S. at 64.

## ARGUMENT AND AUTHORITIES

It would be inappropriate to transfer this case to the Southern District of New York or to sever any claims. Kickstarter has not shown that its Terms and the forum selection clause therein govern this action. Plaintiff's claims do not sound in contract, and do not touch on, require reference to, or necessitate the application of those Terms. Indeed, they exist independently of the existence of the Terms and, as a matter of law, independently of any relationship at all between Plaintiff and Kickstarter. And public interest factors strongly weigh in favor of retaining this case.

**I.      Kickstarter's Terms of Use and Its Forum Selection Clause Do not Govern This Action.**

Plaintiff's claims are outside the scope of Kickstarter's forum selection clause because those claims do not depend on the existence, interpretation, or application of the Terms. The relevant clause provides that

> You agree that any action at law or in equity arising out of or relating to these Terms, or your use or non-use of Kickstarter, shall be filed only in the state or federal courts located in New York County in the State of New York, and you hereby consent and submit to the personal jurisdiction of these courts for the purposes of litigating any such action.

The clause governs actions "arising out of or relating to these Terms, or your use or non-use of Kickstarter." This language does not encompass Plaintiff's antitrust claims, which have nothing to do with the Terms and which would have accrued whether or not Plaintiff agreed to the Terms and whether or not Plaintiff used the Kickstarter platform. Even Kickstarter's own argument and interpretation fail; it argues that the claims must relate either to the Terms or to Kickstarter's platform. ECF 19 at 8. Plaintiff's claims relate to neither.

The Terms select New York law for their construction, so New York law ostensibly dictates the scope of the clause.[2] *Sabal Ltd. LP v. Deutche Bank AG*, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016). New York courts have explained that "where tort claims ultimately depend on the existence of a contractual relationship between the parties, such claims are covered by a contractually-based forum selection clause." *Milmar Food Grp. II, LLC v. Applied Underwriters, Inc.*, 85 N.Y.S.3d 347, 359 (N.Y. Sup. Ct. 2018) (cleaned up). Thus, "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.* The same is necessarily true of statutory claims, such as those under the Sherman Act and the Texas Free Enterprise and Antitrust Act.

A Sherman Act section 1 claim requires the plaintiff to "show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel*, 806 F.3d at 843. Texas's parallel statute "requires proof of 1) a contract, combination, or conspiracy, 2) which is unreasonable, and 3) has an adverse effect on competition in the relevant market." *W. Mktg., Inc. v. AEG Petrol., LLC*, 616 S.W.3d 903, 915 (Tex. App.—Amarillo, 2021), *modified on reh'g*, 621 S.W.3d 88 (2021). Neither claim requires reference to or interpretation of Kickstarter's Terms. Plaintiff could bring its claims even if it had no contract with any Defendant. Likewise, Defendants would be liable if Kickstarter and Indiegogo had colluded to exclude Plaintiff from the market before both sides agreed to anything.

---

[2] New York law does not, however, govern the claims against Kickstarter. The Terms provide only that "these Terms (and all other rules, policies, or guidelines incorporated by reference) will be governed by and construed in accordance with the laws of the State of New York." Thus, any claims, such as Plaintiff's, that do not require reference to or interpretation of the Terms, are not subject to the choice of law clause. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003); *see also Mission Specialty Pharmacy, LLC v. OptumRx, Inc.*, 154 F. Supp. 3d 453, 458 (W.D. Tex. 2015).

Kickstarter claims that "the gravamen of each of Coast Runner's claims ... is that Kickstarter terminated Coast Runner's crowdfunding campaign." ECF 19 at 9. Not so. The gravamen of Plaintiff's claims is that Kickstarter, Indiegogo, and Launchboom illegally conspired to exclude Plaintiff from the crowdfunding market. Again, Plaintiff's claims would be the same, and have the same gravamen, if Defendants colluded to exclude Plaintiff from the market *before* the crowdfunding campaign existed. Kickstarter's claim that Plaintiff's "lawsuit [] depends on how it used Kickstarter's platform or how Kickstarter restricted" that use, ECF 19 at 9, is thus demonstrably wrong.

Likewise, Kickstarter's attempt to justify its actions by shoehorning its Terms into this litigation falls flat. It claims that because the Terms give it the right to govern who uses its platform and for what purpose, Plaintiff must be "disput[ing] the lawfulness of provisions in Kickstarter's Terms," and the case is really "a dispute about Kickstarter's Terms themselves." ECF 19 at 10. Again, not so. Plaintiff does not and would not claim that Kickstarter's right to "cancel, interrupt, remove, or suspend" a campaign is an illegal contract term in itself—rather, Plaintiff claims that Kickstarter's *collusion with others* to exclude Plaintiff from the relevant market violated antitrust laws. Nor does Plaintiff even allege that Kickstarter violated its Terms.

The forum selection clause thus does not apply: Plaintiff's claims do not depend on the existence of a contract, reference any contract, or implicate the interpretation of any contract. Judge Howell's analysis in *Webseed, Inc. v. Dept. of State*, No. 1:24-cv-00576-RP (W.D. Tex. Feb. 24, 2025) (ECF No. 56), does not change this analysis. *Contra* ECF 19 at 10 n.7. There, the plaintiffs alleged a scheme by which their content, posted to various social media platforms, was censored. *Id.* at 1-2. As Kickstarter conveniently leaves out, those plaintiffs never could have posted on those platforms without agreeing to the platforms' terms. In other words, the defendants' actions against

6

the plaintiff's content there—the dispositive question—could not have existed absent the contract. Although Judge Howell rejected the plaintiffs' argument that the "conspiratorial web . . . has absolutely nothing to do with the ordinary interactive computer services contemplated by [the defendants' terms of service]," *id.* at 11, he did so because, fundamentally, the claims "spr[ung] from [the p]laintiffs' use of their [social media] accounts," *id.* at 11-12. To reiterate: the operative facts here, and thus the claims asserted against Kickstarter, do not depend on the existence of any contract and do not spring out of Plaintiff's use of the Kickstarter platform. They spring solely from Kickstarter's illegal collusion against competition.

## II.    Transfer to the Southern District of New York Is Inappropriate.

In addition to the above, the Court should deny Kickstarter's motion to transfer because public interest factors weigh against a transfer. The Court must examine those factors to determine whether denial of a transfer is warranted. *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 543 (W.D. Tex. 2014). There are several public interest factors that a non-movant may rely on, including "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Sobel ex rel. SolarWinds Corp. v. Thompson*, No. 1:21-CV-272, 2023 WL 4356066, at *7 n.6 (W.D. Tex. July 5, 2023) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016). "[C]ourts have also considered judicial economy in the analysis of weighing the public interest." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 562 (Bankr. N.D. Ga. 2017) (*citing Bollinger Shipyards Lockport v. Huntington Ingalls Inc.*, No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015)).

Here, judicial economy overwhelmingly favors retaining this case in the Midland/Odessa Division. "Courts have noted that the holding of *Atlantic Marine* is based on its facts: one plaintiff,

7

one defendant and all of the claims—not just some—being subject to the forum selection clause." *Id.* The most efficient approach here is to deny transfer where multiple parties rely on competing forum-selection clauses. Denying the motion to transfer avoids the highly inefficient scenario in which this Court would force the case to proceed in piecemeal fashion across multiple districts around the country. Likewise, judicial economy is served by denying Defendant Kickstarter's alternative request (at 14) to transfer the entire case to the Southern District of New York. Although Plaintiff disagrees that any party's forum-selection clause should apply, judicial economy is not served by forcing this Court to adjudicate an additional (and unbriefed) argument that Defendant Kickstarter's forum-selection clause should control over Defendant Indiegogo's competing forum-selection clause. Because Defendant Kickstarter has not advanced judicial economy as an independent ground for transfer, the Court should deem any counterargument waived. *See, e.g.*, *Smith v. Tex. DFPS*., No. SA-08-CA-940XR, 2009 WL 2998202, at *3 (W.D. Tex. Sept. 15, 2009) (finding briefing waiver from failure to press claim). And the remaining factors favor Plaintiff in any event.

**1.** It is unlikely that this case would be more expeditiously resolved in the putative transferee district, and it is unlikely that this Court would be more burdened by overseeing this case. The administrative benefits of denying transfer are manifest. This factor examines "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The Midland/Odessa Division is one of the least congested divisions in the Western District: only 345 civil cases were filed in the Division last year, the second fewest after the Pecos Division.[3] By contrast, the Southern District of New York is

---

[3] W.D. Tex., Calendar Year Statistical Report (2024), https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2024/Calendar%20Year%202024%20Statistical%20Public%20Report.pdf?.

8

consistently one of the most congested in the country. As of December 2024, over 16,000 civil cases were pending in the Southern District of New York (nearly 600 per judge), with over a quarter of those cases pending for over three years.[4] But a CM/ECF civil-cases report shows that the Midland/Odessa division only has 286 open civil cases as of March 18, 2025. There can be no serious argument that the public interest is served by transferring this case to the Southern District's already overburdened docket.

**2.** The local interest in resolving the harm to a Texas corporation and its Texas founders is high. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). Plaintiff elected to proceed in the Western District of Texas in view of Plaintiff's extensive efforts to launch a successful crowdfunding campaign from here, as well the significant harm to the local economy and workers based on manufacturing, machining, and milling needs in the oilfield. The importance of on-demand small-scale machining capabilities to the economy is perhaps nowhere better understood than in the Permian Basin area served by the Midland/Odessa Division, where hundreds of companies operate in a competitive and often time-sensitive environment. A localized understanding is uniquely in the public interest because of the oilfield operations that could have benefitted from Plaintiff's product but for the illegal activity of the defendants in this case. And there is no remotely comparable interest or understanding in the Southern District of New York, where there are no oilfield operations. Trying this case in Midland serves "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original). Moreover, the action calls into question the work that

---

[4] U.S. Courts, District Court Statistics, https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distcomparison1231.2024.pdf.

9

Plaintiff is doing in this district because the CR-1 was destined to be distributed from this district and all the work that gave rise to the CR-1 and the attempted crowdfunding campaigns took place here. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Moreover, when, as here, "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id*. at 1338. The harm that resulted from Defendants' conspiracy to violate antitrust laws continues to affect persons in this district. That conclusion is entitled to respect.

**3.** Regarding the applicable state law, contrary to Defendant Kickstarter's suggestion (at 13), the ability of New York courts to apply state law does not favor transfer. This dispute is not governed by New York law because the dispute does not arise from or relate to the Terms or depend on any interpretation thereof. *See supra* n.2. Therefore, Plaintiff's election to proceed under Texas law is valid. This forum is more familiar with that law and thus transferring the case to New York would contravene the public interest. *See, e.g.*, WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3854 n.22 (4th ed.) (providing an example where a "[d]istrict court's familiarity with Massachusetts law, which governed in the case, weighed against transfer").

**4.** Denying the motion to transfer also avoids unnecessary conflicts of laws. By relying on competing forum-selection clauses, Defendants Kickstarter and Indiegogo invite unnecessary conflict-of-laws problems. Even if the Court transfers the entire case to New York as Defendant Kickstarter improperly suggests (at 13), transfer would create a conflict as Defendant Indiegogo argues that the applicable law is that of California, not New York or Texas. *Cf., e.g.*, *Arenas v. Calhoun*, No. SA-16-CV-1203-XR, 2017 WL 4564024, at *8 (W.D. Tex. Oct. 12, 2017) (transferring from Texas to Georgia district courts risks creating a conflict of laws in the application of foreign law because the Southern District of Georgia would be obligated to apply

two different circuit precedents to the overlapping issues of these two cases."); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 677-78 (9th Cir. 2023) (explaining that unlike California law, a claim for tortious interference with business relations under New York law does not require the plaintiff to show an "independent wrongful act"). In any event, Defendant Kickstarter relies (at 13) on its choice-of-law provision. As explained above, Texas law governs here.

### III. Severance Is Inappropriate for Similar Reasons.

The Court should reject Defendant Kickstarter's request to "chop up" this litigation. *Hanover Prest-Paving Co. v. Staten Island Bldg. Prods. Dist. Inc.*, No. 1:21-CV-01672, 2024 WL 1890362, at *7 (M.D. Pa. Apr. 30, 2024). Kickstarter insists (at 14-15) that it should be severed and permitted to litigate in the Southern District of New York. But that result unfairly forces plaintiffs to litigate similar claims against defendants in at least two places at once. *See, e.g.*, *id*. And while Defendant Kickstarter has suggested alternatively that the entire case should be transferred to New York, Defendant Indiegogo makes no similar argument. Indeed, Indiegogo argues that the claims against it should be sent to California. In view of the Defendants' reliance on competing forum-selection clauses, severance is improper. *See, e.g.*, *United Prod. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 563 (E.D. Pa. 2000) (denying a motion to sever because defendants' claims were "intertwined" and a partial transfer would require the same issues to be litigated in two places). And Kickstarter has indicated its consent to have the case heard in California. So in any event there is no cause for the Court to sever claims.

## CONCLUSION AND PRAYER

The Court should deny Kickstarter's Motion to Transfer or Sever.

March 21, 2025.                                          Respectfully submitted.

                                                        */s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Caroline Merideth
Texas Bar No. 24091501
Cody C. Coll
Texas Bar No. 24116214
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on March 21, 2025, via the Court's CM/ECF system.

                                                        */s/ Christopher D. Hilton*
                                                        Christopher D. Hilton