# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **COAST RUNNER, INC.**, <br> Plaintiff, <br><br> vs. <br><br> **KICKSTARTER, PBC; INDIEGOGO, INC.; LABEL CREATIVE, LLC; JOHN DOES #1 AND #2**, <br> Defendants. | Case No. 7:24-CV-00326 |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT LABEL CREATIVE, LLC'S MOTION TO TRANSFER

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
CAROLINE MERIDETH
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... i
Introduction ..................................................................................................................... 1
Background ...................................................................................................................... 1
Legal Standard ................................................................................................................. 4
Argument and Authorities ............................................................................................... 4
I.      The Forum Selection Clauses do not Govern this Action. .................................... 4
    A.    Plaintiff's claims do not depend on the contract and are outside its scope. ..................... 4
    B.    LaunchBoom's authorities are distinguishable and cannot change the outcome. ............. 7
II.     Public Interest Factors Weigh Against Transfer ................................................... 12
III.    Severance is Inappropriate for Similar Reasons. .................................................. 16
Conclusion and Prayer .................................................................................................... 16
Certificate of Service ...................................................................................................... 17

**INTRODUCTION**

Defendants unlawfully conspired to exclude Plaintiff Coast Runner, Inc. ("Coast Runner") from the crowdfunding market. Their collusive, anti-competitive actions violate the Sherman Act and the Texas Free Enterprise and Antitrust Act. Neither the existence nor validity of any contract between Coast Runner and any Defendant alters the antitrust analysis under any of Coast Runner's claims. Nevertheless, Defendant Label Creative, LLC d/b/a LaunchBoom ("LaunchBoom") claims that the forum selection clauses ("FSCs") in both its LaunchBoom Accelerator Consulting Agreement (the "Agreement") and its Terms and Conditions (the "Terms") govern this suit. Not so. LaunchBoom argues that if any court can hear the case, it *must* be in the County of San Diego, California (effectively, the Southern District of California). But the claims against LaunchBoom do not arise out of the Agreement or Terms or turn on their interpretation or enforcement. Because the FSCs are inapplicable—and because transfer is inappropriate in any event—LaunchBoom's motion should be denied.

**BACKGROUND[1]**

For high-tech hardware products, the crowdfunding industry is a functional duopoly: Defendants Kickstarter and Indiegogo control virtually the entire market. The Defendant duopolists here engaged in collusive, anticompetitive behavior to the disadvantage and economic detriment of Plaintiff and its founders. Through their dominance in the relevant market, the duopolists enticed and convinced LaunchBoom, a crowdfunding consulting company, to participate in their scheme.

Plaintiff and its founders, Cody Wilson and Garret Walliman, spent two years developing the CR-1, a general-purpose desktop computer number controlled (CNC) milling machine. And they spent over six months and hundreds of thousands of dollars preparing for a crowdfunding campaign

---

[1] Facts stated in this section are taken from Plaintiff's Original Complaint, ECF 1.

1

to launch their product to the market, raise capital, and prove the viability of Coast Runner as an independent enterprise. The CR-1 was a vast improvement on Wilson and Walliman's previous venture: a special purpose milling machine developed through Wilson's company, Defense Distributed. Unlike the special-purpose Ghost Gunner, which was developed specifically for milling firearm parts, the CR-1 was designed with field engineers, repair technicians, and all-purpose at-home makers in mind. The CR-1 was designed from the ground up as a new product: it included an all-new power supply, purpose-designed circuit boards, innovative dampener technology and fixturing, from-scratch software platform, and numerous other improvements. The Biden administration's Department of Commerce gave the CR-1 a neutral export control classification number, reflecting that the device was not designed to be, and should not be classified as, a firearms manufacturing device.

Nevertheless, Kickstarter and Indiegogo, in a show of disapproval for Wilson and Walliman's separate, firearms-related ventures, illegally conspired to exclude Plaintiff and the CR-1 out of the crowdfunding market, leaving that uniquely beneficial source of funding inaccessible to Plaintiff. Kickstarter brought LaunchBoom into the scheme, and LaunchBoom promptly withdrew from its relationship with Plaintiff, leaving Plaintiff to navigate the aftermath alone. As a result, Plaintiff has missed out on millions of dollars of revenue, an infusion of capital that Plaintiff could have generated without surrendering equity ownership and without taking on debt, all while proving a market for the CR-1 and generating industry buzz around the new product. When crowdfunding works, everyone wins. The entrepreneur receives capital and publicity; the "backers," who pledge funds, are the first to enjoy cutting-edge products; and the platform, such as Indiegogo or Kickstarter, takes a commission. And LaunchBoom would have earned sizeable consulting fees, but as part of its performative show of distaste for Plaintiff, it refunded every dollar it made from the CR-1 project. Here, everyone—except the illegally colluding conspiracy—instead lost.

After months of preparation, disclosures, marketing, testing, and investment—much of which was done in concert with and at the direction of LaunchBoom—the CR-1 launched on Kickstarter on February 27, 2024. Over $500,000 in pledged dollars flowed in during the first hours of the campaign. Total 30-day campaign funds were projected to be millions of dollars. Then it stopped. Kickstarter suddenly and inexplicably ended the campaign, stripping Plaintiff of any benefit. Knowing Indiegogo had previously expressed interest in hosting the CR-1, Plaintiff turned to the other player in the duopoly. Indiegogo agreed to set up a replacement campaign practically overnight, committing to a whole-of-company effort and repeatedly reassuring Wilson and Walliman that it would not pull the rug out from under the CR-1 like Kickstarter had. Indiegogo's campaign launched on February 29 to resounding success. Then it stopped. That summer, Plaintiff learned why: Wilson and Walliman learned through industry connections that the duopoly's highest leaders communicated directly with each other and with LaunchBoom, agreeing to prevent Plaintiff's participation in the market they dominate and control.

Defendants "engaged in a conspiracy that restrained trade in a particular market." *MM. Steel, L.P. v. JSW Steel (USA)*, 806 F.3d 835, 843 (5th Cir. 2015) (defining elements of a section 1 Sherman Act claim) (cleaned up). Plaintiff sued Kickstarter, Indiegogo, and LaunchBoom. Kickstarter and Indiegogo moved to dismiss. ECF 17, 18. Indiegogo also has moved to transfer Plaintiff's claims to the Northern District of California or to compel arbitration, both under its Terms. ECF 16. Kickstarter has moved this court, pursuant to its own Terms, to transfer the case to the Southern District of New York or, alternatively, to sever the claims against it. ECF 19. Finally, LaunchBoom has now moved to transfer the case to the Southern District of California or, alternatively, to sever the claims against it as well. ECF 39.

**LEGAL STANDARD**

Transfer is permitted to "any other district or division . . . to which all parties have consented." 28 U.S.C. § 1404(a). This statute "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). A forum-selection clause applies only if the clause is mandatory, is valid, and covers the plaintiff's claims. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768-71 (5th Cir. 2016). A party opposing enforcement may show that the "public interest" weighs against transfer. *Atl. Marine*, 571 U.S. at 64.

**ARGUMENT AND AUTHORITIES**

LaunchBoom's motion to transfer should be denied. It would be inappropriate to transfer this case to the Southern District of California or to sever any claims. LaunchBoom has not shown that the Agreement's FSC or the Terms' FSC govern this action. Plaintiff's claims do not sound in contract, and do not touch on, require reference to, or necessitate the application of the Agreement or the Terms. Indeed, they exist independently of the existence of the Agreement and the Terms and, as a matter of law, independently of any relationship at all between Plaintiff and LaunchBoom. And public interest factors strongly weigh in favor of retaining this case.

**I.      The Forum Selection Clauses do not Govern this Action.**

**A.      Plaintiff's claims do not depend on the contract and are outside its scope.**

Plaintiff's claims are outside the scope of LaunchBoom's FSCs because those claims do not depend on the existence, interpretation, or application of the Agreement or the Terms. The Agreement provides that:

> All claims *related to this Agreement* shall be brought in the County of San Diego, California.

ECF 39-3 at ¶ 8 (emphasis added). And the Terms provide that:

> Any action, suit, or proceeding *arising out of the subject matter of this Agreement* shall be litigated in courts located in the State of California with proper jurisdiction. Each party consents and submits to the

4

>jurisdiction of any local, state, or federal court located in the State of California with such proper jurisdiction.

ECF 39-4 at ¶ 17 (emphasis added).

The clauses govern "claims related to th[e] Agreement," and claims "arising out of the subject matter of th[e Terms]." This language does not encompass Plaintiff's antitrust or civil conspiracy claims, which have nothing to do with the Agreement or the Terms and which do not necessitate reference to, interpretation of, or enforcement of any portion of those contracts. In other words, no part of the Agreement or the Terms is intertwined with Plaintiff's claims. Nevertheless, LaunchBoom argues that the claims relate to the Agreement or the Terms and must be heard in California. ECF 39 at 3. That argument fails.

The Agreement and Terms select California law for their construction, so California law may dictate the scope of the clauses. *Sabal Ltd. LP v. Deutche Bank AG*, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016) (applying Texas choice-of-law rules, which "give[] effect to choice of law clauses regarding construction of a contract" (citation omitted)).[2] California law provides that "statutory claims fall within [an FSC's] scope when the claims are inextricably intertwined with the construction and enforcement of the parties' agreement." *Henry v. Cent. Freight Lines, Inc.*, 2017 WL 4517836, at *2 (E.D. Cal. Oct. 10, 2017) (cleaned up). Further, as the Ninth Circuit has explained, whether an FSC applies to a tort claim "depend[s] on whether resolution of the claims relat[e] to interpretation of the contract." *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016) (quoting *Manetti–Farrow, Inc. v. Gucci*

---

[2] Plaintiff contests that California law applies to any aspect of this litigation. California law does not govern the claims against LaunchBoom. *See Mission Specialty Pharmacy, LLC v. OptumRx, Inc.*, 154 F. Supp. 3d 453, 458 (W.D. Tex. 2015) ("Choice of law provisions do not apply to claims other than those involving the agreement itself.") Plaintiff's claims do not "involve[]" the agreement or terms whatsoever. Even if the choice of law provisions did apply to their broadest extent, including the "parties' relationship," Plaintiff's claims still do not fall within this clause. Plaintiff's claims are entirely independent of the Agreement, the Terms, and any relationship with LaunchBoom, and thus, the choice of law provision does not apply.

5

*America Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)); *see also Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435, 442 (Cal. Ct. App. 1996) (reciting the same principle). As shown below, none of Plaintiff's claims are governed by the FSCs, and those claims do not require this Court to examine any portion of either the Agreement or the Terms. LaunchBoom's own authorities support this conclusion. *See, e.g.*, *Skyward Energy, Ltd. v. Clipper Windpower Dev., LLC*, 2020 WL 9421045, at *7 (W.D. Tex. Mar. 30, 2020).

A Sherman Act section 1 claim requires the plaintiff to "show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). Texas's parallel statute "requires proof of 1) a contract, combination, or conspiracy, 2) which is unreasonable, and 3) has an adverse effect on competition in the relevant market." *W. Mktg., Inc. v. AEG Petrol., LLC*, 616 S.W.3d 903, 915 (Tex. App.—Amarillo 2021), *modified on reh'g*, 621 S.W.3d 88 (2021). Finally, the "elements of civil conspiracy in Texas are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds of the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.'" *Pilepro, LLC v. Chang*, 152 F. Supp. 3d 659, 678 (W.D. Tex. 2016), *aff'd sub nom PilePro, LLC v. Heindl*, 676 F. App'x 341 (5th Cir. 2017) (citation omitted).

None of these claims require reference to or interpretation of LaunchBoom's Agreement or Terms. Indeed, Plaintiff does not allege that LaunchBoom violated either the Agreement or the Terms—nor must Plaintiff do so to prove an illegal conspiracy like the one here.[3] For example, in *Zichichi v. Jefferson Ambulatory Surgery Center, LLC*, the court held that a conversion claim was subject to a forum selection clause because the plaintiff had "to establish his rights arising out of the agreement"

---

[3] Indeed, under the applicable legal standards, Defendants would be liable if they colluded to exclude Plaintiff from the market before the contracts at issue arose. In other words, Plaintiff could bring its claims even if it had no contract or formalized relationship of any kind with any Defendant. The Named Defendants could have conspired to exclude Plaintiff before Plaintiff assented to any contracts, and Plaintiff would have the same claims.

to prove his claim. 2007 WL 3353304, at *6 (E.D. La. Nov. 7, 2009). On the other hand, that plaintiff's defamation claim was outside the scope of the contract because "plaintiff need not assert any rights or duties under the contract." *Id.* at *7. This case is just like the latter. *See CZ Servs., Inc. v. Express Scripts Holding Co.*, 2018 WL 3972030, at *2-*3 (N.D. Cal. Aug. 20, 2018). Because Plaintiff's claims do not depend on and are not intertwined with the Agreement or the Terms or their interpretation or enforcement, and because Plaintiff need not assert any rights under the contracts, the Court should deny LaunchBoom's motion. *See In re Yahoo! Inc.*, 313 F. App'x 722, 723 (5th Cir. 2009) (affirming denial of transfer when "the claims do not depend on the contractual relationship between" the parties, "do not require interpretation of" the contract, and "involve different operative facts than" a breach of contract claim).

**B.      LaunchBoom's authorities are distinguishable and cannot change the outcome.**

LaunchBoom argues that Plaintiff's "claims arise out of Coast Runner's contractual relationship with LaunchBoom, and they cannot be analyzed without discussing and interpreting the Agreement." ECF 39 at 10. Not so. Plaintiff's claims arise out of Kickstarter, Indiegogo, and LaunchBoom illegally conspiring to exclude Plaintiff from the crowdfunding market. *MM Steel, L.P.*, 806 F.3d at 843; *W. Mktg., Inc.*, 616 S.W.3d at 915. No element of any of Plaintiff's claims depends on or relates to their contractual relationship with any of the Defendants, and none of LaunchBoom's unlawful conduct has anything to do with the Agreement. Thus, interpretation of LaunchBoom's Agreement or Terms is entirely unnecessary. Preferring to end-run these black-letter principles of contract law, LaunchBoom string-cities (at 4-5) inapposite cases. But each of those fact-bound decisions are easily distinguishable.

The *Webseed* plaintiffs alleged a scheme to silence certain speech on major social-media platforms. *Webseed, Inc. v. Dept. of State*, 2025 WL 996458, at *1 (W.D. Tex. Feb. 24, 2025), *report and recommendation adopted*, 2025 WL 993375 (Apr. 1, 2025). Although their claims did not sound in contract,

7

those plaintiffs could never have posted on those platforms—and could never have been subjected to any censorship—without agreeing to the platforms' terms. *Id.* at *1, *3. In other words, the defendants' actions relative to the plaintiffs never could have occurred absent the contract. Although Judge Howell rejected the plaintiffs' argument that the "conspiratorial web . . . has absolutely nothing to do with the ordinary interactive computer services contemplated by [the defendants' terms of service]," *id.* at *5-6, he did so because "regardless of the claims' nature under the law, they spr[ung] from [the p]laintiffs' use of their [social media] accounts," *id.* at 5. *Webseed* is thus inapplicable because the plaintiffs' causes of action could never have arisen absent the contracts. Here, Plaintiff would have the same claim against LaunchBoom if LaunchBoom had participated in an anticompetitive conspiracy to boycott Plaintiff *before* Plaintiff signed any agreement. Indeed, the causes of action and the operative facts would be the same. But, more fundamentally, LaunchBoom does not—because it cannot—describe which provisions of either the Agreement or the Terms this Court will have to interpret, apply, or enforce to resolve Plaintiff's claims.

In *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 719 (2d Cir. 1982), the Second Circuit was asked whether an FSC was *enforceable*, not whether it encompassed the antitrust claims at issue. But, in an off-hand comment, the court noted that "the gist of [the plaintiff's] claim is that [the defendant] wrongfully terminated the agreement. . ." *Id.* at 720. The plaintiff claimed he was terminated because he refused to participate in a price-fixing agreement. *Id.* Naturally, as in *Webseed*, he would never have been in that position absent his agreement to serve as a distributor of the defendant's products. Plaintiff, on the other hand, does not claim a breach and seeks no damages based on the termination of the Agreement or the Terms with LaunchBoom. And Plaintiff could have suffered the same antitrust injury—and thus been in the same position—in the absence of either contract. Moreover, the Second Circuit cited no Texas law (indeed, no law at all) for its comment about the

8

FSC's scope, despite that the contract was to be governed by Texas law. *Id.* at 719-20. That court's extemporaneous dicta should not inform this Court's analysis, let alone control it.

*Staley v. Gilead Sciences, Inc.*, another price-fixing case, is similarly distinguishable. 2021 WL 4972628, at *10 (N.D. Cal. Mar. 12, 2021). Just like *Webseed*, the existence of the subject agreements was fundamental to the claims. *Id.* ("It is the fact of the plaintiff's entry into the Agreement containing the allegedly inflated price that gives rise to the claimed injury." (cleaned up) (quoting *In re Remicade*, 938 F.3d 515, 524 (3rd Cir. 2019)). And the same is true of *Sayre*—another *Webseed* analogue—in which the plaintiff accused Google of exercising monopoly power in violation of the Sherman Act by removing the plaintiff's app from the Google Play store. *Sayre v. Google, Inc.*, 2019 WL 5390038, at *1 (E.D. Tex. Mar. 22, 2019). But, of course, the plaintiff was only able to place his app on Google Play by entering into a contract with Google. *Id.* at *1, *3. LaunchBoom's Agreement and Terms, on the other hand, are entirely irrelevant to Plaintiff's claims, which do not "have their origin or genesis in the contract." *Staley*, 2021 WL 4972628, at *11 (cleaned up). Nor does the resolution of Plaintiff's antitrust claims involve the interpretation or enforcement of any part of LaunchBoom's contracts; LaunchBoom does not argue otherwise.

Likewise, *Cung Le* has no applicability here. In that case, the plaintiffs alleged a Section 2 violation, claiming monopolistic behavior. *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 776 (N.D. Cal. 2015). The court correctly questioned "whether [the p]laintiffs' antitrust claim is one 'to *interpret or enforce*' any provision of Defendants' agreements such that the cases should be transferred to the contractual venue." *Id.* "Because [the p]laintiffs placed at issue the interpretation of certain provisions of their contracts," a court needed to "define the accused provisions . . . so that the finder of fact c[ould] consider whether or not they actually constitute evidence of" a Section 2 violation. *Id.* at 777-78. But here, Plaintiff has not put the Agreement or the Terms at issue, no court need interpret them, and no fact finder will be asked whether they are evidence of a Section 1 violation.

Finally, in *Rini Wine*, the court questioned whether that case, which alleged a breach of contract, was a pure antitrust suit outside the FSC's scope. *Rini Wine Co. v. Guild Wineries & Distilleries*, 604 F. Supp. 1055, 1058-59 (N.D. Ohio 1985) (declining to adopt "plaintiff's mere characterization" of the case). The court refused to base its analysis on "the number of causes of action and the order in which they appear in the complaint." *Id.* at 1059. Instead, it concluded the case arose because of the contract, not independently from it. *Id.* ("The incident from which this dispute arises is indeed the termination of the [contract]."). While certain Defendants might suggest this case also "arises from" the termination of a contractual relationship, it bears repeating that a boycott claim could—and *this* boycott claim does—exist without reference to the interpretation or enforcement of any contract. And, in any event, Plaintiff does not allege any breach.

LaunchBoom cannot change the result merely by pointing out (at 11) that the phrase "relate to" is broad. Even LaunchBoom's authorities to that point recognize there must be *some* connection between the operative facts and the contract.[4] *Wellogix, Inc. v. SAP Am., Inc.*, 58 F.Supp.3d 766, 778-79 (S.D. Tex. 2014) (requiring a "significant relationship to the contract" and finding one only where "the resolution of [the] claims 'arguably depends' on construction of the [contract]"); *see also Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 548 (W.D. Tex. 2014) ("Plainly, Plaintiffs' causes of action derive from a dispute about the privacy policies contained in the contract."). Those authorities do not govern this case.

---

[4] *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002), is inapposite as well. There, the court was simply asked to decide whether claims arising under one agreement had a "substantial connection" to the arbitration clause in another agreement. *Id.* at 393. Because the two contracts "were both key elements of a [single] transaction," "were executed at the same time," and "expressly anticipate[d] the execution of the other," the clause "reach[ed] all aspects of the transaction." *Id.* at 393-94. No similar facts exist here, and the court need not decide any similar issue.

While LaunchBoom's authorities are misplaced and inapposite, *Allianz Global Investments GmbH v. Bank of America Corp.*, 463 F. Supp. 3d 409 (S.D.N.Y. 2020), is instructive. There, the plaintiffs accused the defendants of violating of the Sherman Act because they conspired to manipulate benchmark rates on the foreign exchange market, which caused injury through "inflate[d] bid-ask spreads." *Id.* at 416. *Allianz* is analogous to this case because in both, the "Plaintiffs' claims do not depend on the existence of a contractual relationship between the parties." *id.* at 437 (cleaned up), and therefore both cases' FSCs do not apply. As that court put it: "Although the terms 'related to' and 'in connection to' may be broader than the term 'arising out of,' [even] they do not extend to 'any dispute between the parties.'" *Id.* (citation omitted). Similarly, the Southern District of Texas has analyzed an analogous case and agreed that antitrust claims independent of a contract do not fall within an FSC, even when it uses expansive, "related to" language. *See Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 881 (S.D. Tex. 2019) (antitrust claims did not have "sufficient logical or causal connection to the [contract] for its [FSC] to govern th[e] litigation.").

At bottom, and as described above, even to the extent that the Agreement or the Terms may "relate" to some of Plaintiff's allegations, that is not enough. *Imation Corp. v. Quantum Corp.*, 2002 WL 385550, at *3-5 (D. Minn. Mar. 8, 2002). LaunchBoom may argue that, as in *Imation*, some of the allegations here "could state a claim for breach." *Id.* at *5. But Plaintiff has not accused LaunchBoom of any breach. And as the *Imation* court correctly concluded, the antitrust claims at issue "involve much more than a simple breach" and Plaintiff is not merely "trying to evade the forum selection clause by alleging Sherman Act violations." *Id.* Because "[t]he antitrust allegations do not ultimately depend on the existence of [the contracts], the resolution of the antitrust violations do not relate to the interpretation of [the contracts], and the antitrust allegations do not involve the same operative facts as a parallel claim for breach of contract," the Court should decline to transfer this case or any part of it. *Id.*

## II.  Public Interest Factors Weigh Against Transfer.

In addition to the above, public interest factors weigh against transfer. The Court must examine those factors to determine whether denial of a transfer is warranted. *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 543 (W.D. Tex. 2014). There are several public interest factors that a non-movant may rely on, including "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Sobel ex rel. SolarWinds Corp. v. Thompson*, 2023 WL 4356066, at *7 n.6 (W.D. Tex. July 5, 2023) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016). "[C]ourts have also considered judicial economy in the analysis of weighing the public interest." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 562 (Bankr. N.D. Ga. 2017) (*citing Bollinger Shipyards Lockport v. Huntington Ingalls Inc.*, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015)).

As an initial matter, judicial economy overwhelmingly favors retaining this case in the Midland/Odessa Division. "Courts have noted that the holding of *Atlantic Marine* is based on its facts: one plaintiff, one defendant and all of the claims—not just some—being subject to the forum selection clause." *Id.* The most efficient approach here is to deny transfer where multiple parties rely on competing, but inapplicable, forum-selection clauses. *See* ECF 16 (Indiegogo's Mot. to Transfer to the Northern District of California); ECF 19 (Kickstarter's Mot. to Transfer to the Southern District of New York); ECF 28 (Plaintiff's Resp. to Indiegogo's Mot.); ECF 29 (Plaintiff's Resp. to Kickstarter's Mot.). Denying the motion to transfer avoids the highly inefficient scenario in which this Court would force the case to proceed in piecemeal fashion across multiple districts around the country. *See, e.g.*, *Ha Thi Le v. Lease Fin. Grp., LLC*, 2017 WL 2915488, at *7 (E.D. La. May 9, 2017); 15 FED. PRAC. & PROC. JURIS. § 3845 (4th ed.) (cautioning against "requir[ing] the suit to be litigated in two places"). And to the extent that Plaintiff's claims arise from any contract, which they do not, they arise equally

from Plaintiff's contracts with all Named Defendants. It would therefore be inappropriate to simply "select one to enforce." *Contra Bio World Merch., Inc. v. Interactive Bus. Info. Sys., Inc.*, 2020 WL 6047605, at *4-5 (N.D. Tex. Oct. 9, 2020) ("tak[ing] th[at] approach" where, among three FSCs, only one disagreed, and the contract containing the outlier was not the basis for any claim).

Likewise, judicial economy is served by denying Defendant LaunchBoom's alternative request (at 21) to transfer the entire case to the Southern District of California. Although Plaintiff disagrees that any party's forum-selection clause should apply, judicial economy is not served by forcing this Court to adjudicate an additional (and unbriefed) argument that Defendant LaunchBoom's forum-selection clause should control over Defendants Indiegogo's or Kickstarter's competing forum-selection clauses. And LaunchBoom correctly does not argue that judicial economy supports a transfer of only the claims against it. *See Ha Thi Le*, 2017 WL 2915488, at *7; 15 FED. PRAC. & PROC. JURIS. § 3845. In other words, LaunchBoom has not advanced judicial economy as reason to transfer only the claims against it.[5] And the remaining factors favor Plaintiff in any event.

**1.** Relative congestion suggests a transfer is inappropriate. This factor examines "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The Western District of Texas and the Southern District of California have similar time-to-disposition statistics for civil cases. As of September 30, 2024, civil cases took an average of 7.8 months from filing to disposition in the WDTX, and 6.6 months in the SDCA.[6] As such, the time-to-disposition statistics are neutral. *See USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (finding factor neutral where

---

[5] As a result, the Court should deem any counterargument—that judicial economy *does* support a transfer—in LaunchBoom's reply to be waived. *See, e.g.*, *Smith v. Tex. DFPS.*, 2009 WL 2998202, at *3 (W.D. Tex. Sept. 15, 2009).

[6] *See* U.S. Dist. Cts., National Judicial Caseload Profile ("NJCP") at 37, 69 (Sept. 30, 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf.

difference in time to disposition 3.9 months). *But see In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) ("case-dispositive statistics may not always tell the whole story"). But the Midland/Odessa Division had 345 civil cases filed in the Division last year,[7] and a CM/ECF civil-cases report shows that the Midland/Odessa division has 286 open civil cases as of March 18, 2025. On the other hand, the California court received 545 new civil cases per judgeship in the 12-month period ending in September of last year, and it maintained 372 civil cases per judgeship at the end of that period.[8] Accordingly, this factor either leans against a transfer or, at worst, is neutral.

**2.** The local interest in resolving the harm to a Texas corporation and its Texas founders is high. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *See In re Google LLC*, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). Plaintiff elected to proceed in the Western District of Texas in view of Plaintiff's extensive efforts to launch a successful crowdfunding campaign from here, as well the significant harm to the local economy and workers based on manufacturing, machining, and milling needs in the oilfield. The importance of on-demand small-scale machining capabilities to the economy is perhaps nowhere better understood than in the Permian Basin area served by the Midland/Odessa Division, where hundreds of companies operate in a competitive and often time-sensitive environment. A localized understanding is uniquely in the public interest because of the oilfield operations that could have benefitted from Plaintiff's product but for the illegal activity of the defendants in this case. And there is no remotely comparable interest or understanding in the Southern District of California. Trying this case in Midland/Odessa therefore serves "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original). Moreover, the action calls into

---

[7] W.D. Tex., Calendar Year Statistical Report (2024), https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2024/Calendar%20Year%202024%20Statistical%20Public%20Report.pdf

[8] *See* NJCP at 37, 69.

14

question the work that Plaintiff is doing in this district because the CR-1 was destined to be distributed from this district and all the work that gave rise to the CR-1 and the attempted crowdfunding campaigns took place here. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Also, when, as here, "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id.* at 1338. The harm that resulted from Defendants' conspiracy to violate antitrust laws continues to affect persons in this district. That conclusion is entitled to respect.

**3.** This forum is more familiar with the Texas state-law claims asserted, and thus transferring the case to California would contravene the public interest. *See, e.g.*, WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3854 n.22 (4th ed.) (providing an example where a "[d]istrict court's familiarity with Massachusetts law, which governed in the case, weighed against transfer"). As noted above, California law applies, at most, to the interpretation of the FSCs. But because neither the Agreement nor the Terms govern any of Plaintiff's claims, that choice of law provision does not govern the merits or substance of this case. Therefore, Plaintiff's election to proceed under Texas law—because it is a Texas company that planned its crowdfunding campaign from Texas and was injured in Texas—is valid, and this Court, which is manifestly more familiar with Texas law, should retain this case.

**4.** Denying the motion to transfer also avoids unnecessary conflicts of laws. By relying on competing forum-selection clauses, Defendants LaunchBoom, Kickstarter, and Indiegogo invite unnecessary conflict-of-laws problems. Even if the Court transfers the entire case to California as Defendant LaunchBoom improperly suggests (at 21), transfer would create a conflict as Defendant Kickstarter argues that the applicable law is that of New York, not California or Texas. *Cf., e.g.*, *Arenas v. Calhoun*, 2017 WL 4564024, at *8 (W.D. Tex. Oct. 12, 2017) (transferring from Texas to Georgia district courts risks creating a conflict of laws in the application of foreign law because the Southern District of Georgia would be obligated to apply two different circuit precedents to the overlapping

issues of these two cases."); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 677-78 (9th Cir. 2023) (explaining that unlike California law, a claim for tortious interference with business relations under New York law does not require the plaintiff to show an "independent wrongful act"). In any event, as explained above, Texas law applies here and governs Plaintiff's claims.

### III. Severance is Inappropriate for Similar Reasons.

The Court should reject Defendant LaunchBoom's request to "chop up" this litigation. *Hanover Prest-Paving Co. v. Staten Island Bldg. Prods. Dist. Inc.*, 2024 WL 1890362, at *7 (M.D. Pa. Apr. 30, 2024). LaunchBoom insists (at 22) that it should be severed and permitted to litigate in the Southern District of California. But that result unfairly forces plaintiffs to litigate similar claims against defendants in at least two places at once. *See, e.g.*, *id.* And while Defendant LaunchBoom has suggested alternatively that the entire case should be transferred to California, Defendant Indiegogo makes no similar argument. Compounding this tangled web of competing transfer requests, Kickstarter argued that the entire case should be sent to New York. In view of the Defendants' reliance on competing forum-selection clauses, severance is improper. *See, e.g.*, *United Prod. Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 563 (E.D. Pa. 2000) (denying a motion to sever because defendants' claims were "intertwined" and a partial transfer would require the same issues to be litigated in two places).

### CONCLUSION AND PRAYER

The Court should deny LaunchBoom's Motion to Transfer or Sever.

May 2, 2025                                         Respectfully submitted.

>                                           */s/ Christopher D. Hilton*
>                                           Judd E. Stone II
>                                           Texas Bar No. 24076720
>                                           Christopher D. Hilton
>                                           Texas Bar No. 24087727
>                                           Ari Cuenin
>                                           Texas Bar No. 24078385
>                                           Caroline Merideth
>                                           Texas Bar No. 24091501
>                                           Cody C. Coll
>                                           Texas Bar No. 24116214
>                                           **STONE HILTON PLLC**
>                                           600 Congress Ave.
>                                           Suite 2350
>                                           Austin, TX 78701
>                                           Telephone: (737) 465-3897
>                                           judd@stonehilton.com
>                                           chris@stonehilton.com
>                                           ari@stonehilton.com
>                                           caroline@stonehilton.com
>                                           cody@stonehilton.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on May 2, 2025, via the Court's CM/ECF system.

>                                           */s/ Cody C. Coll*
>                                           Cody C. Coll

17