IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **COASTAL RUNNER, INC.,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **MO: 24-CV-00326-DC-RCG** |
| **KICKSTARTER, PBC;** | § | |
| **INDIEGOGO, INC.; LABEL** | § | |
| **CREATIVE, LLC; JOHN DOE #1;** | § | |
| **and JOHN DOE #2;** | § | |
| *Defendants*. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTIONS TO SEVER AND TRANSFER VENUE

BEFORE THE COURT are Defendant Indiegogo, Inc.'s ("Defendant Indiegogo")

Motion to Sever and Transfer Venue and alternative Motion to Compel Arbitration (Doc. 16);

Defendant Kickstarter, PBC's ("Defendant Kickstarter") Motion to Transfer Venue and

alternative Motion to Sever and Transfer Venue (Doc. 19); and Defendant Label Creative, LLC's

("Defendant Label Creative") (collectively, "Defendants") Motion to Transfer Venue and

alternative Motion to Sever and Transfer Venue (Doc 39).[1] This case is before the undersigned

through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules

for the Assignment of Duties to United States Magistrate Judges. After due consideration, the

Court **GRANTS IN PART** and **DENIES IN PART** Defendant Indiegogo's Motion to Sever and

Transfer Venue (Doc. 16), **DENIES** Defendant Kickstarter's Motion to Transfer Venue (Doc.

19), **DENIES** Defendant Label Creative's Motion to Transfer Venue (Doc. 39).

I.     BACKGROUND

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

On December 9, 2024, Plaintiff Coast Runner, Inc. ("Plaintiff") filed suit against Defendants, asserting claims for violations of the Sherman Act, 15 U.S.C. § 1; violations of the Texas Free Enterprise and Antitrust Act; tortious interference with a contract; business disparagement; and civil conspiracy.[2] (Doc. 30 at 38–42). Plaintiff is an entrepreneur and creator of a product called CR-1, a device that "brings extremely precise metal machining and engineering technology to a space fit for an ordinary desktop." *Id*. at 3. In the initial promotion of its product, Plaintiff solicited assistance from various companies by means of crowdfunding to raise capital and get its product off the ground. *Id*. at 1–2. Defendants are among those who either assisted with or facilitated Plaintiff's goal to raise money through crowdfunding. *Id*. According to the Complaint, Defendants Kickstarter and Indiegogo have a "duopoly," as they "control virtually the entire crowdfunding market for industrial-grade machines." *Id*. at 1. Defendant Label Creative is a consulting company that acts as a sort of middleman to "help new entrepreneurs navigate their relationships with [Defendants] Kickstarter and Indiegogo." *Id*. With the assistance of Defendant Label Creative, Plaintiff first sought Defendant Kickstarter's services. *Id*. at 3. Together, Plaintiff and Defendants Kickstarter and Label Creative negotiated terms and devised a plan to launch a campaign to promote and raise capital for CR-1. *Id*. But after what Plaintiff believed to be a successful start to their campaign, Defendant Kickstarter abruptly terminated the project and business relationship with Plaintiff. *Id*. at 4. Shortly thereafter, Defendant Label Creative also cut ties with Plaintiff. *Id*. Consequently, Plaintiff turned to Defendant Indiegogo—Defendant Kickstarter's primary competitor—for help. *Id*. Just as with Defendant Kickstarter, Defendant Indiegogo initiated a crowdfunding campaign only to

---

2. In addition to the above-identified defendants, Plaintiff sued John Doe #1 and John Doe #2. (Doc. 1 at 1). These defendants remain unidentified and have therefore not appeared in the suit. All five causes of action pertain to the unidentified defendants. *Id*. at 38–42. However, only three are alleged as to the named defendants: (1) violation of the Sherman Act, (2) violation of the Texas Free Enterprise and Antitrust Act, and (3) civil conspiracy. *Id*.

abruptly abandon all efforts shortly after starting. *Id*. at 5. Plaintiff's theory behind these events

is this: "[I]n response to outside pressure [from John Does #1 and #2] to drop [Plaintiff] because

of its founders' political views, [Defendant] Kickstarter had demanded, and both [Defendant

Label Creative] and [Defendant] Indiegogo agreed to, an illegal conspiracy through which all

three firms would refuse to promote the CR-1." *Id*. at 5–6. Boiled down, Plaintiff's contention is

Defendants, as despots of the crowdfunding market, colluded to ice Plaintiff out from a market in

which it otherwise would have flourished, causing Plaintiff to miss out on substantial financial

profits. *Id*. at 1–7.

By their present Motions, Defendants seek to sever and/or transfer the claims as to each

named defendant pursuant to three contracts each has with Plaintiff, all with distinct forum

selection clauses. (Docs. 16, 19, 39). Each clause calls for a different forum. *Id*. Defendant

Indiegogo submits the Northern District of California as the proper forum, Defendant Kickstarter

seeks transfer to the Southern District of New York, and Defendant Label Creative argues in

favor of transfer to the Southern District of California. *Id*. Plaintiff responded to all three

Motions. (Docs. 28, 29, 42). Defendants Indiegogo and Kickstarter replied. (Docs. 33, 38).

Consequently, the instant matter is ripe for disposition.

## II.   DISCUSSION

As mentioned, each named defendant—whether as a primary argument or in the

alternative—requests severance. (Docs. 16, 19, 39). In addition, each requests enforcement of

their respective forum selection clauses, all of which require adjudication of disputes in distinct

forums. *Id*. Thus, the issues before the Court are narrow. First, the Court must determine whether

severance is appropriate. Second, it must decide whether transfer is proper, and if so, to which

forum. The Court addresses each in turn.

1.  **Severance**

Federal Rule of Civil Procedure 21 provides, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claims against a party." A district court has broad discretion in determining whether to sever an action and may do so if the opposite course might cause delay or prejudice." *Brigida v. Valk*, No. 18-CV-1443, 2019 WL 13175535, at \*2 (N.D. Tex. Dec. 18, 2019) (citing *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995)). To determine whether severance is appropriate, a court may consider the following factors: "(1) whether the claims arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and (5) whether different witnesses and documentary proof are required." *Id*. (quoting *United States v. 0.2853 Acres of Land, More or Less, Located in Dall. Cnty*, 16-CV-2814, 2019 WL 5000161, at \*3 (N.D. Tex. Sept. 16, 2019), *R. & R. adopted,* 2019 WL 4996855 (N.D. Tex. Oct. 7, 2019)).

Here, at least four of the five factors weigh against severance. First, Plaintiff's claims arise out of one transaction/occurrence. (Doc. 30). As mentioned, Plaintiff's entire case rests on an alleged conspiracy between Defendants to thwart Plaintiff's goal: to achieve crowdfunding in the promotion of the CR-1. *Id*. at 1. Second, all three named defendants here have the exact same claims asserted against them—violations of the Sherman Act, violations of the Texas Free Enterprise and Antitrust Act, and civil conspiracy. *Id*. at 38–42. Needless to say, inherent in a conspiracy claim is some form of factual overlap, making severance ill-advised. *See Kent v. Drought*, No. 08-CV-414, 2010 WL 4320334, at \*8 (W.D.N.Y. Oct. 28, 2010) ("It would be an abuse of discretion to sever the parties to this action where there is a conspiracy claim involving

all parties."); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, No. 09-CV-782, 2012 WL 3929821, at *4 (S.D. Tex. Sept. 7, 2012) (denying severance where the plaintiff alleged civil conspiracy as to multiple defendants), *aff'd*, 845 F.3d 652 (5th Cir. 2017); *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 863 (C.D. Ill. 2003) ("[D]iligent research by both the parties and the Court has uncovered no case in which a Rule 21 severance has been granted in a civil conspiracy case. That being said, research uncovered some authority indicating that severance is inappropriate where the issue presented is a 'unitary problem,' such as the single conspiracy alleged in this case."). Third, judicial economy would be hindered, not promoted, if the parties were severed and transferred to their respective forums. In other words, if the Court were to grant each motion, the same case involving the same facts and law would be litigated in the Northern District of California, the Southern District of New York, and the Southern District of California. The fourth factor is not so simple. Discussed in greater detail below, each defendant has a contract containing a forum selection clause with Plaintiff. (Docs. 16, 19, 39). If those clauses prove to be valid and encompass the issues in this case, an argument can be made that Defendants would be prejudiced if the Court declined to enforce their forum selection clauses. Conversely, the prejudice to Plaintiff would be nearly crippling if forced to litigate the same case in three separate federal districts. Fifth, although Plaintiff and Defendant Label Creative do not expressly address this issue, Defendants Indiegogo and Kickstarter argue all witnesses are in either California or New York. (Docs. 16 at 15; 19 at 12). Given the overlap in facts and law, the Court struggles to see how witnesses or documentary proof would differ by defendant.

In sum, only the fourth factor—whether prejudice would be averted by severance—is neutral. All other factors weigh heavily against severance. Thus, in light of the degree to which

the law, facts and general circumstances of this case are intertwined, the Court finds severance improper.

Accordingly, to the extent the parties request the Court sever the claims as to each named defendant, Defendants' Motions are **DENIED**. (Docs. 16, 19, 39).

## 2. Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. The Supreme Court and the Fifth Circuit have "clarified that 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.'" *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). "Usually, a court applying that doctrine must determine whether there is an adequate forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Id*. However, the analysis changes where the parties have a contract with a valid forum selection clause:

> First, the plaintiff's choice of forum merits no weight, and the plaintiff, as the party defying the forum-selection clause, has the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Second, the court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests. Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*Atl. Marine*, 571 U.S. at 51. Notably, the analysis only changes where there is a valid forum selection clause. *Id*. In determining validity, courts generally ask three questions: (1) whether the

forum selection clause is mandatory or permissive, (2) whether the clause is valid and enforceable, and (3) whether the case at issue falls within the purview of the clause. *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, No. 19-10366, 2020 WL 1157613, at *6 (E.D. La. Mar. 10, 2020).

Here, all three forum selection clauses are mandatory. Defendant Indiegogo's forum selection and arbitration clause are as follows: [3]

> Legal Disputes Not Subject to Arbitration *Will Be Handled* in San Francisco, CA and Subject to California Law.
>
> Indiegogo is based in San Francisco, California. For any action not subject to arbitration, *you and Indiegogo agree* to the personal jurisdiction of a state court located in San Francisco, CA or the United States District Court for the Northern District of California. The Terms and this relationship between you and Indiegogo *shall be governed* in all respects by the laws of the state of California, without regard to its conflict of law provisions.
>
> . . . .
>
> You and Indiegogo agree that this arbitration undertaking is made pursuant to or in connection with a transaction involving interstate commerce . . . . This Section is *intended to be interpreted broadly and governs all disputes between us*, including but not limited to claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before these Terms or any prior agreement (including, but not limited to, claims related to interactions between users); and claims that may arise after the termination of these Terms.

(Doc. 16-4 at 10–11) (emphasis added). Defendant Kickstarter's forum selection clause is as follows:

> In the unfortunate situation where legal action does arise, these Terms (and all other rules, policies, or guidelines incorporated by reference) *will be governed* by and construed in accordance with the laws of the State of New York and the United states . . . . *You*

---

3. Because Defendant Indiegogo's forum selection clause is to be understood in conjunction with its arbitration clause, the Court includes both—first the forum selection clause, then the arbitration clause. (Doc. 16-4 at 10–11).

> *agree* that if you wish to file, commence, or prosecute any claim,
> action, lawsuit or proceeding of any kind, at law or in equity,
> arising out of or relating to these Terms or your use or non-use of
> Kickstarter, *you will do so* only in a state or federal court located in
> New York County in the State of New York, *and will not* file,
> commence, or prosecute any such claim, action, lawsuit, or
> proceeding in any other forum.

(Doc. 19-1 at 19) (emphasis added). Finally, Defendant Label Creative's forum selection clause

is as follows:

> This Agreement *shall be* governed by the laws of the State of
> California without regard to its conflict of laws provisions. Any
> action, suit, or proceeding arising out of the subject matter of this
> Agreement *shall be* litigated in courts located in the State of
> California with proper jurisdiction. Each party consents and
> submits to the jurisdiction of any local, state, or federal court
> located in the State of California with such proper jurisdiction.

(Doc. 39-4 at 5) (emphasis added). The language of all three forum selection clauses clearly

evinces an intent that they be mandatory, not permissive. What is more, Plaintiff does not

argue—nor does the Court have any reason to believe—the forum selection clauses are invalid.[4]

Thus, having found the clauses are all mandatory and valid, the Court next turns to whether this

suit falls within the purview of the clauses.

"The scope of a forum selection clause is not limited to claims for breach of the contract

that contains the forum selection clause." Courts generally recognize the following distinction:

"Clauses that extend to all disputes that 'relate to' or 'are connected with' the contract are

construed broadly, while clauses that cover disputes 'arising out of' or over 'the implementation

and interpretation of' the contract are construed narrowly." *Pinnacle Interior Elements, Ltd. v.

Panalpina, Inc.*, No. 309-CV-0430, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (citing

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). Here,

---

4. Because Plaintiff does not argue any clause is invalid, the Court need not delve into this issue. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) ("A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable.").

Defendant Indiegogo's arbitration clause is extremely broad, as it encompasses "claims arising out of *or relating to* any aspect of the relationship between [Defendant Indiegogo and Plaintiff]." (Doc. 16-4 at 11) (emphasis added). And its forum selection clause is even more broad because it serves as a sort of catch-all for claims that are not subject to arbitration. *Id*. at 10. Plaintiff attempts to argue its "claims are outside the scope of [Defendant] Indiegogo's forum selection clause because those claims do not depend on the existence, interpretation, or application of the Terms." (Doc. 28 at 4). This argument is faulty for two reasons. First, the clause is not limited to claims arising solely from the contract. Second, the Court is not convinced Plaintiff's claims are completely extra-contractual. As mentioned, Plaintiff's primary qualm with Defendant Indiegogo is that it allegedly terminated its contract with Plaintiff based on a conspiracy with the other defendants to shut Plaintiff out of the crowdfunding market. (Doc. 30 at 1–7). Perhaps in an attempt to render its claims extra-contractual, Plaintiff only raises its tortious interference with a contract claim as to the unnamed defendants, as opposed to the three named defendants with contracts containing forum selection clauses. *Id*. at 38–32. But this does not change the fact that this suit falls within the purview of the forum selection clause at least, and perhaps even the arbitration clause.[5] Accordingly, the Court finds Defendant Indiegogo's forum selection clause is mandatory, valid, and the issues in this suit fall within its purview.

The same goes for Defendant Kickstarter's forum selection clause. Its terms are equally broad and encompass any claims "arising out of *or relating to* these Terms or [Plaintiff's] use or non-use of Kickstarter." (Doc. 19-1 at 19) (emphasis added). Plaintiff's claims most certainly stem from an issue regarding its non-use of Defendant Kickstarter's services. Defendant Label Creative's forum selection clause is slightly less broad, only covering claims "*arising out of* the

---

5. The undersigned believes it wise to allow the transferee court to determine the applicability and implications of the arbitration clause, so the Court here does not make a determination on that issue.

subject matter of this Agreement . . . ." (Doc. 39-4 at 5) (emphasis added). But even so, the Court is not convinced Plaintiff has successfully demonstrated this case is one of those "unusual cases" exempted from application of a valid forum selection clause.

The Court next turns to which clause should prevail over the others, and by extension, to which court this case should be transferred. "A number of courts faced with multiple valid conflicting [forum selection] clauses have simply selected one to enforce, looking to all the facts and circumstances of the case." *Bio World Merch., Inc. v. Interactive Bus. Info. Sys., Inc.*, No. 19-CV-2072, 2020 WL 6047605, at *4 (N.D. Tex. Oct. 9, 2020). The Court sees three primary reasons that compel it to transfer this case to the Northern District of California pursuant to Defendant Indiegogo's forum selection clause. First, the Court notes Defendant Indiegogo's contract is the only one that contains an arbitration clause in addition to its forum selection clause. (Doc. 16-4 at 10–11). Because the Court here does not rule on Defendant Indiegogo's request to compel arbitration, that issue would be better handled by the court well acquainted with the laws surrounding it. Second, and perhaps most crucial, Defendant Kickstarter—the only New York party—consents to transfer to California: "[T]o the extent the Court is not inclined to sever [Plaintiff's] claims against [Defendant] Kickstarter and prefers that [Plaintiff's] claims against all three defendants remain together in a single action, [Defendant] Kickstarter would not oppose transfer to federal court in California . . . ." (Doc. 19 at 16 n.12). Third, while Defendant Label Creative's Motion seeks transfer to the Southern District of California, its forum selection clause only requires that claims be adjudicated in the state of California. (*Compare* Doc. 39 at 9 ("This case should therefore be transferred to the Southern District of California under the doctrine of *forum non conveniens*.")) *with* (Doc. 39-1 at 5 ("Any action . . . shall be litigated in courts located in the State of California . . . .")). For these reasons—the existence of an

arbitration agreement in Defendant Indiegogo's contract, Defendant Kickstarter's consent to transfer to California, and the generality of Defendant Label Creative's clause—the undersigned believes the Northern District of California to be the proper forum.

As mentioned, when a dispute is covered by a valid forum selection clause, courts are to look only to public-, not private-interest factors. *Atl. Marine*, 571 U.S. at 51. These factors also weigh in favor of transfer. The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of laws or in the application of foreign law." *Kunkel v. Carrabba's Italian Grill, Inc.*, No. 07-CV-0866, 2007 WL 9717540, at *1 (N.D. Tex. Nov. 7, 2007). But once again, "[b]ecasue only the public-interests may weigh against transfer, and '[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases.'" *Pinnacle Fuel, LLC v. Pure Aviation, LLC*, No. 22-CV-979, 2023 WL 3082409, at *3 (W.D. Tex. Apr. 14, 2023), *R. & R. adopted*, 2023 WL 3294602 (W.D. Tex. May 5, 2023) (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014)). The first is the only factor that weighs against transfer. The Northern District of California certainly has a heavy docket relative to that of the Western District of Texas, with 10,235 civil cases filed in the former and 4,729 filed in the latter during a 12-month period ending in March 31, 2025. *See* U.S. District Courts – Civil Federal Judicial Caseload Statistics, Table C-3 (March 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-3. As for the second factor, California certainly has an interest in deciding the implications an arbitration agreement and contracts in general drafted pursuant to its laws and to which its local companies are parties. And although

Plaintiff's principal place of business is in Austin, Texas, this suit has no other ties to the Western District of Texas. (Doc. 30 at 7). Third and fourth, California courts are much more adept in California law and better suited to interpret the contractual provisions involved here pertaining to conflicts of law issues.

Based on the three case-specific reasons, along with the public-interest factors, the Court believes transfer to the Northern District of California is proper.

### III.    CONCLUSION

Accordingly, the Court **DENIES** Defendant Indiegogo's Motion insofar as it seeks severance and **GRANTS** its request for transfer to the Northern District of California. (Doc. 16). The Court further **DENIES IN FULL** Defendants Kickstarter and Label Creative's Motions. (Docs. 19, 39). Finally, it is **ORDERED** that the whole case be **TRANSFERRED** to the United States District Court for the Northern District of California in the San Francisco Division.

It is so **ORDERED**.

SIGNED this 14th day of August, 2025.


_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE